### DAVID D. CRANE, ADMINISTRATOR OF JOANNA CRANE, DEC'D, v. PRUDDEN ALLING.

In an action against one of the obligors on a joint and several bond, no notice need be taken of the other; for if the obligee sues only one of the obligors, he acts upon it as a several bond. A defect in form in the declaration, is always cured, by pleading. A receipt in full may be explained and disputed; but a release under hand and seal, estops and concludes forever. A release to one of two joint and several obligors, is a release to both; but a *covenant not to sue* one of several obligors, can never have the effect of a release, except to the one to whom it is given

A covenant never to sue the obligor, when there is but one in the bond, is a release of the bond.

This was an action of debt on a money bond; the defendant pleaded specially, the substance of which is set out in the opinion of the court, delivered by Justice FORD. To this plea, the plaintiff demurred, and there was a joinder in demurrer.

FORD, J. John Alling and Prudden Alling became jointly and severally bound, the 26th of September 1810, to Stephen Crane, in an obligation of four thousand three hundred dollars, for the payment of two thousand one hundred and fifty dollars, the 1st of April 1815. On this bond, Jediah Crane and Joanna Crane, executors of Stephen Crane, deceased, brought an action against John Alling, *one* of the obligors; but they shortly after discontinued it on the terms hereafter mentioned, in consideration of his paying them four hundred dollars on the bond

Then Joanna Crane, who became surviving executrix, resorted to this action against Prudden Alling, the *other* obligor, in order to recover the residue of the money from him; and having demurred to the fourth plea, by him pleaded, she died, and the argument of the demurrer is brought on by David D. Crane, administrator *de bonis non* of the obligee.

The defendant, in his argument, went back of his plea, and objected to the manner of laying the breach of the bond, in the declaration; in which it is averred that Prudden Alling had not paid, &c. instead of charging that neither John nor Prudden had paid. But this objection cannot be allowed; for in an action against *one* of the obligors only on a joint and several bond, no notice need be taken of the other obligor; it being a settled rule that, " if the obligee sues only *one* of the obligors, he acts upon it as a *several* bond." 1 *Saund. Rep.* 291, note 4; 2 *Chitt. Plead.* 116, note (*i ;*) *Id.* 436, note (*r ;*) *Chitt. on Bills*, 346. And this mode of laying the breach is productive of no injury to the defendant; for he may always plead that the *other* obligor has paid the money. But if we should concede this breach to be defectively laid, it would be only a defect in form, which is always cured by pleading to the declaration, instead of demurring to it, specially. The declaration is therefore good in substance, and what remains, is to consider the objections to the plea.

The substance of the plea is this—That while an action was depending on this bond against John Alling the other obligor, the executors received of him four hundred dollars, and by a certain writing under their seals, in consideration thereof, promised and agreed, that they would cause the said action against him to be discontinued, that they would prosecute no kind of action thereafter on the bond against him, and, that if they did, that this agreement should then become a good bar to such action, and operate as an absolute release and acquittance of the bond to him. And so, that the executors *did release* the said bond to John Alling the other obligor, and *thereby* released the same to the said Prudden Alling.

The agreement described in the plea, was actually made by the executors. It is called by the defendant, a *release ;* but by

Administrator of Crane *v.* Alling.

the plaintiff it is called a deed of *covenants.* If it be an actual, technical, release of the bond to *one* of the obligors, it is unquestionably a discharge to *both.* The law is inflexibly settled, as laid down in COKE LITTLETON, and other writers, that, "if two men be jointly and severally bound in one obligation, and the obligee release to *one* of them, *both* are discharged." *Co. Litt.* 232, *a; Clayton* v. *Kynaston,* 1 *Lord Raymond,* 420 ; *Bac. Abr. Release, G.* The reason why it is a discharge to both is a cogent one ; a release is a legal, formal admission by the creditor that the bond is all paid. *Bank* v. *Messenger,* 9 *Cowen,* 38 ; it is tantamount to *a receipt in full ;* and it requires no proof that when a bond is paid in full, the bondsmen are all discharged. It makes no difference by which of the obligors the debt was paid ; for if any one of them paid the money, the bond is discharged against them all. Now a release under hand and seal, is better than a receipt in full, because it is stronger evidence of full payment. A receipt in full, may be explained and disputed ; but what a creditor does by deed of release under hand and seal, estops and concludes him forever ; for a man can never be allowed to gainsay his own *deed.* A formal, technical release being therefore conclusive evidence of a payment *in full,* it is reasonably and necessarily regarded in law as a *performance* and extinguishment of the bond, and consequently a discharge of all the obligors therein named. On the other hand, a covenant not to sue one of several obligors, is no evidence of the payment of the bond, but exactly the contrary, and therefore it can never have the effect of a release ; nothing will extinguish the bond, but an actual, technical release. In the case of *Cheetham* v. *Ward,* 1 *Bos. and Pul.* 634, HEATH, J., uses the epithet " *actual* " release. When this point occurred again, years afterward, in the case of *Rowley* v. *Stoddard,* 7 *Johns. Rep.* 210, THOMPSON, J., delivering the opinion of the whole court, says, that a *receipt* given to one obligor for part only, though expressed to be *in full of all demands,* will not answer the purpose ; it must be a " *technical* " release. Many years after the last case, when the point came up again, between the *Catskill Bank and Messenger,* 9 *Cowen,* 38, SAVAGE, C. J.,

delivering the opinion of the whole court, says, a covenant not to sue one, will not answer the purpose, it must be a " *technical* " release ; the reason he assigns is, " because *it* (that is a technical release,) is an admission by the creditor *that the debt is paid*, whereas a covenant not *to sue* one of the obligors contains no such admission, but the *contrary*, that it is *not* paid. Now this agreement of the executors, is so far from being any admission that the debt is all paid, that it explicitly states the principal debt to have been two thousand one hundred fifty dollars, in the year 1815, and that only four hundred dollars have been received towards it. How then can this instrument be, like a technical release, an admission that the whole debt is paid ? It is deficient in the very vital principle that makes the release of one, a discharge of all. It was argued, that a release by operation of law is as good as a technical one ; as appears by the case of *Cheetham* v. *Ward*, before mentioned, where the obligee of a bond, made one of the several obligors therein mentioned, his *executor*, and this was held to discharge them all. But this fulfils the whole requirement of the law ; it amounts to a forgiving of the *debt*, and an extinguishment of the bond, so as to leave no debt remaining. It proves everything that could be proved by a technical release. But the agreement of the executors *not to sue* John Alling, taken in its utmost latitude, does not forgive the *debt* to him. Lord Chief Justice HOLT, emphatically said in *Lacy* v. *Kynaston*, 12 *Mod.* 552, if A and B be jointly bound to C, and C covenant *not to sue A ;* this is no covenant not to sue *B ;* so the executors do not covenant not to sue *Prudden* Alling. If they recover of Prudden Alling, the balance of the bond, suppose it be three thousand dollars, will *he* not sue *John* Alling for half of the money paid on their joint bond and recover it ? How then can the agreement not to sue John Alling, be construed into a forgiveness of the debt to him, while their right to sue his partner remains ? There is evidently no resort to cases necessary, touching the construction of an agreement like the present, when the principle itself is so plain, that nothing which can be given to *one* obligor will discharge the others, if what is given to him falls short of that actual technical release, or release by operation of law, which evinces that the debt has been fully paid, or forgiven

and extinguished.   This has been the decision of all courts of
justice, and of the most eminent jurists, and it is founded on
the plain justice and reason of the thing.

As the agreement in question, amounts to no admission that
the debt has been paid, and is not an actual technical release,
what is it ?   I answer, it is simply a deed of covenants showing
that by far the greater part of the debt remains unpaid, and
covenanting never to sue John Alling for the residue; but
implying, from leaving *Prudden* Allen the other obligor *out of*
the covenant, that they are to take their remedy for what
remains due, against him.   Of the three covenants contained in
the deed, the first is to discontinue ; the second is never to sue
John again; and third and last, which is the only one even
alleged to be a release, is still a covenant, that if they should
sue him again, that this agreement *not to sue*, shall be a *bar,*
and shall *operate* as a release.   It contains no present words
that they *do* release the bond to him as pleaded in the plea; but
only a simple *promise* that the agreement shall, at some future
day, operate as a release, not absolutely; but on a mere con-
tingency ; that of their suing him *again*, which contingency
has never happened; nor can it be a release till that event
happens.   Who does not see that if there had been any *intent*
to do such a weak and foolish act, as for the executors to give
John an absolute release, that it could have been done in five
lines ?   Who does not see that such a release would have made
the executors liable to the estate for the whole of the money
due on the bond ?   Who does not perceive the extreme caution,
*not* to make it a release ?   And ought the court to push the
delicate power of construction to such an unjust and unprece-
dented length as to turn this, which is merely a covenant, into
a technical release, against the plain intent of the makers of the
instrument, thereby to bring misery and ruin on those innocent
executors, and absolve the obligors from a just bond given by
them to the testator ?   There would be no other law for such
a construction, than the arbitrary will of the court; for as to the
cases adjudged, they will be found directly against it.

I grant that a covenant *never to sue* the obligor, where there
is but one in the bond, will be construed into a release by the

court, to avoid circuity of actions, and because such construction can affect nobody else. *Hodges* v. *Smith, Cro. Eliz.* 623; 1 *Ter. Rep.* 446 ; 2 *Saund.* 48, *note* 1. But where there are several obligors, if a covenant with one of them, not to sue *him*, were to be construed into a release, it would enable the *other* obligors, who are no parties to the covenant, and who are wholly strangers to the *consideration*, to take advantage of it; and therefore it shall never be construed into a release. This is so clearly stated by Chief Justice HOLT in *Lacy* v. *Kynaston*, 12 *Mod.* 551, that no words can make it plainer. If A. and B. be jointly and severally bound to C. in a sum certain, and C. covenants with A. not to sue him, this shall *not* be a release ; for he does not covenant not to sue B. the other obligor, and still has a remedy. In strict conformity to the principle of this case, was that which followed long afterward, of *Dean* v. *Newhall*, 8 *Ter. Rep.* 170. Newhall and one Taylor were bound jointly and severally to Dean, for the payment of one hundred pounds; afterward, Taylor paid Dean forty-eight pounds, who covenanted on receiving that part, *never to sue* Taylor on the bond, and *if* he should sue him, he covenanted that the said agreement should be a *bar* and a good and sufficient *release* and discharge to the said Taylor. This covenant was pleaded by *Newhall*, as a *release* to both the obligors. But Lord KENYON delivering the opinion of the whole court, said, that the case of *Lacy* v. *Kynaston* was a direct authority against its being a release ; that is, according to the opinion in *Lacy and Kynaston*, it was a *covenant only*, to which, *Newhall* was no party, and the remedy against *him* remained. He added that neither justice nor honesty would allow a bond of one hundred pounds to be discharged by paying less than half of it. What is this but deciding that, to discharge both obligors it must be a technical release; such as amounts to an admission that the whole debt is paid; and any agreement not importing that, shall be a covenant only. In point of fact it is not a release ; nothing can make it such, but *construction;* and Lord KENYON refused to lend the construction of the court in aid of such a purpose; he said it would not be honest to do so ; and he left it to be what it *was;* not a release, but a mere

*covenant* as to what act should be construed *by the parties* into one, if that act should ever be done, which however has not been done yet ; and therefore the very condition, on which alone it was to be a release, has never been performed. The defendant's counsel admits that the case of *Dean* v. *Newhall* is precisely like that now before us ; but he thinks it grew out of a mistake of Lord KENYON, in supposing that there was something in the case of *Lacy* v. *Kynaston* to support it. Now I consider the principle in one case precisely like that in the other. The case before Lord KENYON was no more a release, as Lord HOLT says, "IN ITSELF," than the case put by Lord HOLT ; both of them were *covenants merely*, and both the Judges refused to *turn* them, by judicial construction, into *releases ;* and the reason given by Lord KENYON is, that it would be neither *just nor honest* to do so. Since that time, the opinion of Lord KENYON has been cited with approbation by eminent Judges. THOMPSON J. cites it in 7 *Johns.* 207, and actually understands Lord KENYON'S decision to be *the same* as that in *Lacy* v. *Kynaston* viz. : that the agreement was not a release *in itself* in either case, but a covenant only. It was made one of the cases on which SPENCER C. J. founded his decision in 2 *Johns.* 450. Savage C. J. refers to it among others for the decision of the court, in 9 *Cow.* 38. It is also cited without hesitation or doubt in the accurate notes of Serj. Williams on *Saunders' Reports*, 2 *Saund.* 48, *note* 1, approved in succession, by those eminent men, and founded on principle as well as cases, and being in maintenance of justice and honesty, the decision is highly respectable, and has my full concurrence. The agreement of the executors is a covenant only ; it is no release to John Alling, and consequently being no discharge to the other obligor, the plea must be overruled, and judgment rendered on the demurrer, for the plaintiff.

RYERSON, J. concurred.

HORNBLOWER, C. J. having drawn the covenant in question while at the bar, did not sit to hear the argument, and delivered no opinion.

*Plea overruled.*

CITED in *Brown* v. *White*, 5 *Dutch.* 514.