[L. A. No. 9934. In Bank.—June 28, 1929.]

ANNA WALLNER, Respondent, v. JOHN F. BARRY et al., Appellants.

James H. Howard for Appellants.

O. H. Myrick and C. W. Pendleton for Respondent.

RICHARDS, J.—This appeal is from a judgment in favor of the plaintiff and against the defendants in an action for damages caused by flood water along a stream upon the banks of which the plaintiff was a lower proprietor and the defendants were upper proprietors. The stream in question carries the water from what is known as Eagle Rock Valley in the northwestern part of the city of Los Angeles to a lower outlet. The defendants in the year 1923 were engaged in subdividing a tract of land lying along or near said stream, but found themselves unable to record their tract map without providing access to Glassell Avenue, sometimes called Eagle Rock Boulevard, which lies along the northwesterly side of the stream, the tract itself being upon the southeasterly side thereof, and the ordinances of the city of Los Angeles requiring provision for such access to a main avenue. The defendants accordingly acquired a strip of land fifty feet in width which would enable them to extend their most westerly street, Avenue Forty, northerly across the stream, thereby making contact with Glassell Avenue. It thus became necessary for them to construct a fill of said width across the ravine of said stream and to provide a culvert therein for the passage of its water, and to construct a roadway along the top of the fill, thus making

the required contact with Glassell Avenue. The defendants constructed such fill and culvert during the months of May and June of 1923 and thereupon submitted their map to the officials of the city of Los Angeles, together with an offer of dedication to the public use of all of the streets, avenues, drives, ways and walks of their said tract as shown upon such map. The city, upon the recommendation of the city engineer, at its meeting on October 11, 1923, adopted a resolution approving said map. The property of the plaintiff was located about five blocks below the location of said fill, abutting on the southwesterly side of the stream. On March 4, 1924, a heavy storm occurred in the region of Eagle Rock and along the upper courses of said stream, causing a very considerable flood of water, amounting to a torrential flow, to collect and come down the stream, the extent and menace of which is set forth in a finding of the trial court reading as follows: "That on said 4th day of March, 1924, . . . and during and on account of the showers and fall of rain, aforesaid, a large body of water collected, and was caused and permitted to be impounded by defendants on said day, immediately above and back of said fill and embankment, and against and because of said fill and embankment; and while so collected and impounded in the place and time and manner aforesaid, said impounded water, being of great volume, weight and pressure, destroyed and swept away said fill and embankment, and then and there rushed down and along said storm drain ditch with great force and momentum to and over plaintiff's said premises, and swept plaintiff's house and home, which was then and theretofore occupying her said premises, from its foundations and into said ditch and into the current of said flood, whereupon water, thick with mud, silt, rubbish and filth flowed into and over said house, and over and upon plaintiff's said household furniture, effects and personal property contained in said house." On the day following said flood the plaintiff applied for relief from the immediate effects thereof to the city engineer, who with other officials and employees of the city went out and replaced the plaintiff's house upon its foundations and thereupon secured from the plaintiff some sort of release for any liability which might have arisen as against the city on account of said flood. Later on the plaintiff commenced this action

against the defendants for the recovery of the damages caused to her aforesaid property by reason of said flood, the items of which, as set forth in her complaint, aggregated the sum of $2,047.75. The defendants in their answer denied responsibility for the occurrence of the overflow which had invaded the plaintiff's premises and for the damage caused thereby, and denied that the same had been caused by reason of any carelessness, negligence, unskilfulness, or unworkmanlike manner in the construction and maintenance of the fill or of the culvert which penetrated the same and through which the waters of the stream were at all times supposed to flow. They further set forth as a separate defense that their plans for the construction of the fill and culvert across the ravine occupied by the stream had been submitted for approval to the city of Los Angeles and had been, prior to the construction thereof, approved by the officials of the city, and that the culvert and fill and the roadway thereover, after the construction thereof in accordance with said approved plan, had been dedicated to the city of Los Angeles, which had accepted the dedication and had thereby assumed control over and responsibility for the future maintenance thereof, and that the defendants had thus been relieved of all further responsibility therefor, and were, therefore, after the dedication, no longer liable for any floods occurring along the course of said stream or for any damage caused thereby or in consequence of any defective construction of the culvert and fill. In an amendment to their answer the defendants also pleaded that the plaintiff in consideration of the restoration of her house and residence to its former foundations after the flood had released the city of Los Angeles from liability and had thereby also released the defendants from liability. The cause came on for trial before the court upon the issues thus framed, sitting without a jury. Whereupon a considerable volume of evidence was presented on behalf of both parties to the action respecting the construction of the fill and the size and manner of the construction of the culvert, and also relating to the severity of said storm with its resultant flood and the accumulation of the waters thereof above and about the fill, and the inadequacy of the culvert to carry off said waters and the giving away of the fill with the consequent overflow and destruction or damage caused

to the plaintiff's property. Upon the submission of the cause the court made its findings of fact and conclusions of law, setting forth in the former with considerable detail the facts as above stated, finding that the plaintiff's version thereof as set forth in her complaint and supporting evidence was true, and generally that the allegations of the defendants' answer were untrue, and also finding that the special defenses urged therein were unsupported by the evidence in the case. As conclusions of law based upon such findings the court found that the injury caused to the plaintiff by the occurrence of said overflow was the result of the negligence of the defendants in the construction and maintenance of the culvert and fill, and that plaintiff was entitled to judgment in the sum of $927.75, for which sum judgment was accordingly entered. The defendants have appealed from such judgment, and urge in support of their appeal several contentions which we shall now proceed to consider.

The appellants' first and second contentions are that the finding that the damage occurring to the plaintiff's property was caused by the release of impounded water and that the fill and culvert were so negligently designed or constructed as to cause the impounding of such water was unsupported by the evidence in the case. We have examined the record bearing upon this contention and, without attempting to restate the evidence in detail, we are satisfied that the finding of the trial court touching this subject finds full support therein. It is argued by the appellants that the torrential storm which caused the outflow of waters in said stream to such an extent as to result in their temporary impounding behind the culvert and fill was such an exceptional occurrence as to be deemed an act of God, and was of such a character as that which the defendants were not required to anticipate or provide against in the construction of their culvert and fill. The evidence in the case does not, however, support this contention, since it shows that the storm, while torrential, was not unusual to that region, and hence should have been anticipated and provided against in the capacity of the culvert and in the permanent resistant properties of the fill. There was substantial evidence before the court to the effect that the culvert was so constructed that the bracing timbers thereof were placed inside rather

than outside of the culvert, and thus offered an obstruction to the free passage of storm waters through the same, even if it were to be conceded that the culvert were otherwise of such interior proportions as would suffice to carry off such storm waters. There was also substantial evidence to the effect that the position of the culvert was such that instead of being in the direct course of the stream where the waters thereof could easily approach and enter it, the culvert was set over against the bank of the ravine where the waters would be compelled to turn from their direct channel in order to enter the culvert, and that such deflection of the storm waters upon the occasion in question caused a whirlpool at the point of their attempted entrance into the culvert, which finally resulted in their breaking through the fill, with the consequent downflow of their accumulated flood upon the plaintiff's property.

■ The appellants' third contention is that when they built the culvert and fill and the roadway thereover with the approval of the city engineer, and thereafter made their offer to dedicate the same in common with the other streets, drives, ways and walks of their said subdivided tract of land as the same appeared upon the map thereof, the city by its approval of said map had thereby accepted such dedication and by so doing had relieved the defendants from responsibility for any future damages resulting from the construction and maintenance of the culvert and fill.

■ The authorities do not support the appellant's contention that a mere offer to dedicate the streets, avenues, drives, ways, walks, sewers or culverts in connection with a proposed subdivision amounts to a dedication thereof so as to relieve the would-be dedicators from future liability for the proper construction or care thereof in the absence of a very definite acceptance of such dedication on the part of the municipality. ■ The mere filing, recording or even approval of the map of such subdivision will not suffice to establish such accepted dedication as would either impose upon the municipality any of the obligations which the dedicators had theretofore been under to properly construct, or keep in repair such portions of their property as they were proposing to devote to a public use, nor operate to relieve the latter therefrom. The early cases of *Stone* v. *Brooks,* 35 Cal. 489, and *Archer* v. *Salinas City,* 93 Cal. 43

[16 L. R. A. 145, 28 Pac. 839], would seem to have settled this question contrary to the appellant's contention, and it would seem to be clear that in the instant case the city of Los Angeles through the rather informal action of its officials in the mere approval of the map of the defendants' proposed subdivision neither assumed, nor relieved the defendants from, responsibility for any damages arising from the imperfect construction or inadequate maintenance of said culvert and fill.

The fourth and final contention of the appellants is that the plaintiff in applying to the city officials for relief from the immediate consequences of the disaster to her home and property, and in receiving such relief by the return of her house to its foundations and by thereupon signing some sort of a release of the city from liability had thus also released the defendants from their responsibility to her for the effects of the flood. The argument of the appellants in this behalf is apparently predicated upon their contention that the city was a joint tort-feasor with the defendants and that being such it was the law that a release by the plaintiff of one of such joint tort-feasors also released the others from their liability for such damages as they had jointly caused. There are several difficulties in the way of an acceptance or approval of this contention, but an all sufficient one is to be found in the fact that the city of Los Angeles cannot be held to be a joint tort-feasor with these appellants, since, as a matter of law, it was in no degree liable for injuries to private persons or their property of the character complained of here. The law is well settled in this state that public corporations are not to be held liable for injuries suffered by individuals through the negligence of their officials or agents in the absence of an express provision in the statutes or in the charter thereof imposing such liability. It is conceded by the appellants that no such liability has been thus imposed upon the city of Los Angeles, and this being so it could not become a joint tort-feasor with the appellants in occasioning the injuries of which the plaintiff complains. A further equally complete answer to the appellant's contention in the foregoing regard is to be found in the fact that in whatever release from liability the plaintiff signed at the suggestion of the city officials or employees for restoring her house to its

foundations she did not purport to admit or accept the temporary relief from her disaster thus afforded as a recompense for the whole sum of injury which had been caused by the overflow of her home and property as these are enumerated in detail in her complaint herein and are found to be sustained by the findings of the trial court. Even if it were to be conceded that the city of Los Angeles was a joint tort-feasor with these appellants and that the same liability rested upon it as such for her injuries, it is a well-settled rule that before one tort-feasor can be held to be discharged from liability through the release of another, the consideration for such release must have been accepted by the plaintiff in full satisfaction of the injury. (1 Cyc. 318, and cases cited; *Ellis* v. *Esson*, 50 Wis. 138 [36 Am. Rep. 830, 6 N. W. 518]; *Chamberlain* v. *Murphy*, 41 Vt. 110; *Smith* v. *Gayle*, 58 Ala. 600; *Snow* v. *Chandler*, 10 N. H. 92 [34 Am. Dec. 140]; *Whiting* v. *Plumas Co.*, 64 Cal. 65 [28 Pac. 445].)

We therefore arrive at the conclusion that there is no merit in any of the contentions of the appellants upon this appeal. This being so, the judgment must be and is hereby affirmed.

Shenk, J., Seawell, J., Langdon, J., Preston, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.