### WELDON *v.* LEHMANN.

No. 39876          January 23, 1956          84 So. 2d 796

*Will S. Wells, J. E. Skinner,* Jackson, for appellant.

*Wm. Harold Cox,* Jackson, for appellee.

HALL, J.

On May 1, 1952, appellee, as the owner of a motion picture show building, entered into a lease contract with appellant whereby appellee agreed to do and perform seventeen different items of repairs and alterations to said building so as to convert the same into a mercantile building for the operation of a variety store. The only item with which we are concerned in this suit is the agreement by appellee to install a new ceiling twelve feet above the floor, to be smooth plaster on metal lath, on steel channels, suspended from existing 2 x 12 rafters and 2 x 10 cords. The work was done by R. K. Jayne under an independent contract with appellee and was completed on or about July 8, 1952, on which date ap-

pellant moved into the building with his fixtures and merchandise and began shortly afterward the operation of his business under the name of Ben Franklin Store.

At about 8 o'clock p.m. on May 28, 1953, after the store had been closed for the night, the entire suspended ceiling gave way and fell upon and greatly damaged appellant's merchandise and fixtures. He brought this suit against appellee and R. K. Jayne as co-defendants for the recovery of damages sustained by him, alleging negligence in the construction and installation of the suspended ceiling. It was shown by the evidence that in such type of construction there are three methods of construction which are approved in the building trade. One is to wrap the suspending wires completely around the overhead joists; another is to bore holes in the joists and run the wires through such holes and securely wrap them; another is to drive large nails partially through the sides of the joists parallel with the floor and to wrap the wires around the projections of such nails. It is admitted that neither method was used in this case but instead the wires were attached to nails which were driven vertically, or almost vertically, into the bottom edge of the joists. According to the testimony of a construction engineer this was a dangerous and unsafe method because such vertical nails would lose their holding power due to the expansion and contraction and ageing of the joists and would pull out and permit the ceiling to drop. He inspected the wreckage shortly after the failure of the ceiling and found that most of the nails did pull out. Neither Jayne nor his foreman in charge of this work had ever before installed a suspended ceiling or seen one installed.

The case was submitted to the jury under instructions of the trial court and the jury returned a verdict in favor of appellant in the sum of $10,000.00. Upon motion of the appellee the trial court set aside this verdict and

rendered judgment in his favor notwithstanding the verdict, and appellant appeals from this action.

Prior to the trial appellant settled with R. K. Jayne for $1,000.00 cash and $375.00 payable in monthly installments and filed an amended declaration wherein Jayne was omitted as a defendant. The releasing portion of the instrument which Weldon executed is as follows: "* * * I, the undersigned, J. E. Weldon, do hereby acquit, release, exonerate and fully and finally discharge the said R. K. Jayne from any and all liability of every kind and character which have accrued or which may in the future accrue unto me as the result of said fall of said ceiling and for said consideration I do further hereby agree to dismiss the said litigation now pending against the said Jayne on the docket of the Circuit Court of said First Judicial District of Hinds County, Mississippi as the same affects the same Jayne." Appellee contends that the said release had the effect of extinguishing the entire claim for damages not only as against Jayne but also as against appellee, and that for this reason the judgment appealed from should be affirmed. We shall consider this point first. An examination of the release discloses no idea on the part of appellant or Jayne that they were settling the liability of appellee or that they were making a full settlement for all damages. In order for a release of one joint tort-feasor to have the effect of releasing the other joint tort-feasor, the satisfaction received by the injured party must be intended to be and must be accepted as full compensation for the damages sustained. Bailey v. Delta Electric Light Co., 86 Miss. 634, 38 So. 354; Bogdahn v. Pascagoula Street Ry. & Power Co., 118 Miss. 668, 79 So. 844; Watermann-Fouke Lumber Co. v. Miles, 135 Miss. 146, 99 So. 759; Gulf Refining Co. v. Ferrell, 165 Miss. 296, 147 So. 476.

We pass now to the main point in this case, and that is whether appellee is liable to appellant for

the negligence of his independent contractor in making the repairs and alterations to the building. Appellee relies on six Mississippi cases to the effect that in the absence of an express covenant in the lease, and in the absence of deceit and misrepresentation, there is no implied covenant on lessor's part that the premises are safe and suitable for lessee's business nor that the landlord will make repairs thereto, but that is not the question with which we are faced. Here we have a specific contract for certain repairs and alterations, including the installation and construction of a suspended ceiling. Appellee obligated himself to construct and install the suspended ceiling. He delegated the duty to an independent contractor. The question presented in this case is whether a landlord is liable for the negligence of his independent contractor resulting in an unsafe condition of the premises when the landlord has obligated himself to make such repairs. The specific question has not been heretofore passed upon in this state so far as we can find. Many jurisdictions have held the landlord liable in such case, and many others, while admitting that the landlord would be liable if the repairs were made by his own servant, have undertaken to draw a distinction between work by a servant and work by an independent contractor, and have held that the landlord is not liable. According to 52 C. J. S., Landlord and Tenant, Sec. 417, the authorities as a whole are in confusion on the question. Also, according to the notes in 15 A. L. R. 975-976, 29 A. L. R. 766-776, 90 A. L. R. 50 and 162 A. L. R. 1111 the authorities are in conflict. Respectable authority supports both sides of the question and we are free to adopt the principle which appeals to us as being more in line with justice and reason and the public policy of this state.

We are impressed with the idea that there is little différence between the duty of the landlord to his tenant under the circumstances here disclosed and the duty of

a master to his servant with reference to the servant's place of work, and we do not think the landlord can escape his duty by delegating to an independent contractor the making of the agreed alterations and repairs. A well reasoned case on the subject is Bailey v. Zlotnick, 149 Fed 2d 505, 162 A. L. R. 1108 from which we quote:

"The Restatement of the Law of Torts, which is entitled to particular respect when authorities are in conflict, sets out the principle which we think should be applied to this case. It makes the liability of an employer for harm caused by the negligence of an independent contractor depend on whether the employer had a duty to the person injured which the independent contractor failed to perform on his behalf. If such a breach of duty actually resulted from the work of the independent contractor the landlord may not escape liability since liability for non-performance of a duty may not be shifted to another. According to this principle it is immaterial whether the breach of the employer's duty occurred during the progress of the work or from a defective condition of the work after it was finished.

"We regard this principle as sound. We must, therefore, examine the extent of the landlord's duty to the tenant in the case before us. Here it was the tenant's duty to repair and there would have been no violation of the landlord's duty had the plaster fallen through mere neglect. The landlord was, nevertheless, under a duty not to create an unsafe condition on the premises either permanent or temporary by any affirmative action on his part. It is admitted that when the contractor saturated the plaster with water he made the premises unsafe. The landlord is, therefore, liable because his contractor has created a condition of the premises which it was the landlord's duty not to create. The landlord's duty does not extend to a negligent act of a person who is on the premises but who is not his direct agent, unless the act results in an unsafe condition. Therefore,

had the contractor injured the tenant by dropping a pipe there would have been no liability. This rule is expressed in the Restatement by the assertion that the landlord is not liable where the negligence of the independent contractor 'consists solely in the improper manner in which the contractor does the detail of the work.' In other words, a distinction is made between the negligent manner of the work and the condition of the premises which results from the negligence. It is only for the latter that the landlord is liable.

"There is a practical as well as a logical reason for following the principle of the Restatement. The effect of the cases which strictly limit the landlord's liability enables him to avoid a large part of the risks involved in making repairs or improvements and to compel an injured tenant to seek out and sue a contractor with whom he has had no dealings and who may not be financially responsible. In an earlier day it might have been argued that it was a hardship on landlords not to afford them this means of escaping liability for unsafe conditions caused by negligence in making repairs or improvements. Today insurance which protects both the landlord and the tenant against liability for the condition of the premises is available. Liability for an unsafe condition of the premises no longer is a substantial hardship."

We deem it unnecessary to quote from the many other authorities which support this view. References to them will be found in the references which we have above given to C. J. S. and A. L. R. We therefore hold that the lower court was in error in setting aside the verdict of the jury and giving a judgment non obstante veredicto in favor of the appellee. We have carefully examined the instructions which were given to the jury and find no error in them. Since the jury was correctly charged as to the applicable law it follows that the judgment of the lower court should be set aside and that there should

be entered here a judgment in favor of appellant for the amount of the verdict.

Reversed and judgment here.

*McGehee,* C.J., and *Kyle, Holmes* and *Gillespie,* JJ., concur.