Charles J. FRIDAY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15114.

United States Court of Appeals Ninth Circuit.

Jan. 4, 1957.

Fredricks & Roberts, Boise, Idaho, for appellant.

George Cochran, Doub, Asst. Atty. Gen., Sherman F. Furey, Jr., U. S. Atty.,
Boise, Idaho, Paul A. Sweeney, Marcus A. Rowden, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before DENMAN, Chief Judge and POPE and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

Friday appeals from a summary judgment denying his claim against the United States for damages in the amount of $61,386.85 and costs for injuries received by him from a collision of his automobile with another automobile driven by one Lacy, which was caused by an alleged negligently driven truck hitting the rear of Lacy's car and forcing it to the wrong side of the road in the path of Friday's car. The wrongdoing truck belonged to the United States and was then being used in its service in transporting one Fennerty, its driver, on U. S. Highway 30 in the State of Idaho. Further negligence of the United States is alleged as follows:

> "that the United States, acting by and through its agents and servants, and in particular, its agent and servant, S. W. Wells, was negligent, reckless and careless in directing the said Francis E. Fennerty to drive said government vehicle to a certain government soil and water testing project near Caldwell, Idaho, the evening of October 29, 1953, and was negligent, reckless and careless in authorizing and directing the said Francis E. Fennerty to remain on said project and continuously work throughout the night of October 29, 1953, and to thereafter drive said government vehicle from that point and return to Boise, Idaho, which he was doing at the time of the above described collision without allowing the said Francis E. Fennerty to obtain sufficient sleep or rest before his return to Boise, Idaho, and that the fatigued condition of the said Francis E. Fennerty was a contributing factor to the negligent and careless operation of said United States' vehicle prior

to and at the time of the collision with the automobile of Plaintiff."

\* \* \* \* \*

"That said Francis E. Fennerty just prior to the time of the collision had negligently and carelessly fallen asleep while driving the said United States Government vehicle; that one S. W. Wells was an employee of the United States Government then employed in the U. S. Geological Survey, Ground Water Branch, and was the immediate supervisor of the said Francis E. Fennerty and had negligently, recklessly and carelessly required and compelled the said Francis E. Fennerty to drive the said United States Government vehicle without adequate rest and sleep, and under the circumstances of the collision, the said Francis E. Fennerty as a private person, and the the said S. W. Wells as a private person would be liable to Plaintiff for the damages resulting from their negligence and the resulting collision, and the United States of America, if a private employer, would be liable to Plaintiff for such damages suffered from said accident."

■ We do not agree with the holding of the district court that this alleged conduct of Wells, whose real name was agreed to be West, in putting on the highway such a dangerous combination of a man mentally incapable of driving an automobile safely, and the automobile which thereby became a powerfully dangerous instrument, does not state a cause of action. It is a separate cause of action from that of Fennerty's different negligence.

■ Nor do we agree with district court that West's choice between sending or not sending such a dangerous combination on a public highway is a discretionary function within Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427. As suggested in 346 U.S. at page 42, 73 S.Ct. at page 971, this was a decision not at the "planning" put rather at the "operational level".

Concerning the separate negligence of Fennerty and West, each is denied in the answer. With regard to Fennerty it was agreed that, while not acknowledging that he was negligent, he gave $5,000 to Friday for which he and Mrs. Friday made the following agreement not to sue Fennerty, for the claim Friday alleges amounts to over $61,000:

"It is further understood and agreed that payment hereunder *is not and shall not be construed as admission of liability* by the said Francis E. Fennerty and Phyllis C. Fennerty and that this is a full, complete and final *compromise* settlement of *disputed claims* as between the parties hereto.

"It is further understood and agreed that this release, as stated herein, shall be a bar to any action or suit against the said Francis E. Fennerty and Phyllis C. Fennerty by the undersigned for any claimed negligence on their part, but this release shall not inure to the benefit of *any other tort feasor,* upon whom and against whom a liability may be predicated by reason of [a] independent negligence of, [b] acts by, or [c] liability on the part of said other tort feasor or tort feasors causing or contributing to the damages and injuries suffered by the undersigned." [Emphasis supplied.]

It is apparent that the above reservation does not release "any other tort feasor" for "acts by or liability" of such other tort feasor. Thus by its language, are excepted all other tort feasors whether independent or joint.

■■ With regard to the liability of the United States for the acts of its agent, Fennerty, it is elemental that both may be sued and each held liable for the tort. That is to say, the government is a tort feasor through its agent. On the question whether the release of Fennerty released the employing United States for its tort feasance above stated, *it is* significant that the act itself provides

with particularity that a release of the United States releases the employee. The obvious inference from this specific provision is that a release of the tort feasor employee does not release the tort feasor employer, the United States, at least where rights against the United States are reserved. United States v. First Security Bank, 10 Cir., 1953, 208 F.2d 424, 427–428. In that case rights against the government were specifically reserved.

█ We think the action against the United States was reserved in the agreement not to sue the Fennertys by the provision that "this release shall not issue to the benefit of any tort feasor * * * against who[m] a liability may be predicated by reason of * * * acts by * * * on the part of the said other tort feasors or tort feasors causing or contributing to the damages and injuries suffered by the undersigned."

It is also apparent that the above release does not purport to be a payment for all the injuries suffered by Mr. and Mrs. Friday. It is no more than a settlement of a disputed claim. In such settlements, it is quite possible that the dispute over the claim makes it such a doubtful one that the settlement may be for a mere minor fraction of the injuries suffered by the person accepting the settlement payment.

█ In a case involving independent tort feasors, the Idaho court has held that a release of one releases the other only where the release purported by its terms to indemnify the plaintiff completely for his loss. The court stated this rule by quoting a California case involving *"joint* tort" feasors as follows:

"The applicable law is thus conclusively stated: 'Even if it were to be conceded that the city of Los Angeles was a joint tort-feasor with these appellants and that the same liability rested upon it as such for her injuries, it is well-settled rule that before one joint tort-feasor can be held to be discharged from liability through the release of an-

other, the consideration for such release must have been accepted by the plaintiff in full satisfaction of the injury. * * * ' Wallner v. Barry, 207 Cal. 465, 279 P. 148, at page 151."

Valles v. Union Pac. R. R., 1951, 72 Idaho 231, 239, 238 P.2d 1154, 1159.

It was unnecessary in that case to apply this rule to joint tort feasors, since the case involved independent tort feasors, and the court expressly stated that it held "neither way * * * as to joint tort-feasors".

The above dictum of the Valles case, citing the California rule that the injuries themselves shall be fully compensated in both independent and in joint negligence settlements of claims was preceded in another Idaho case by an even more striking dictum in a separate tort feasor case, stating that in *both separate and joint tort feasor* cases the settlement with one reduces the liability of the other only to the extent of the amount paid. In Young v. Anderson, 33 Idaho 522, at page 524, 196 P. 193 at page 194, 50 A.L.R. 1056, the court stated:

"Since, however, appellant was only entitled to receive compensation for his injuries received, the consideration received from the Boise Valley Traction Company for the release of any claim against it operated to reduce pro tanto the amount of any damages he was entitled to recover against any other tort-feasor responsible for his injuries, and this is true whether the tort-feasors be joint or independent."

We are the more impressed that these dicta state the law of Idaho by the following language of the court in the Valles case in concluding its opinion in 72 Idaho at page 240, 238 P.2d at page 1160:

"Too many courts in maundering on this subject have made such a fetish of the pat phrase, 'there can be but one recovery for a tort,' they have lost sight of and ignored the fundamental factor in even handed justice that it is as imperative that

the tort claimant shall receive full compensation, as it is that the tort-feasors shall not pay twice or more than the *full* award, determined judicially or otherwise, as a unit or piecemeal."

This language accords with Wigmore's statement of the rule that a release to one of several joint tort feasors is a discharge of all is merely a "surviving relic of the Cokian period of metaphysics".

The judgment is reversed.