JOHN J. BREEN, PLAINTIFF-RESPONDENT, v. HARRY G. PECK, DEFENDANT-APPELLANT.

Argued October 20, 1958—Decided December 1, 1958.

*Mr. Aaron W. Nussman* argued the cause for the appellant (*Mr. Maurice S. Austin,* attorney).

*Mr. William E. Sandmeyer* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J. The Appellate Division, in an opinion by Judge Clapp reported at 48 *N. J. Super.* 160 (1957), reversed the action of the Bergen County Court which had granted the defendant's motion for summary judgment and had dismissed the plaintiff's complaint. We certified on the plaintiff's application under *R. R.* 1 :10–2. See 26 *N. J.* 306 (1958).

In March 1952 Norman Levine authorized the plaintiff John J. Breen, a real estate broker trading as Bankers Realty Co., to obtain a purchaser for his home at 1032 Eastlawn Drive, Teaneck, New Jersey. The plaintiff advertised the property for sale and obtained prospective purchasers, including the defendant Harry G. Peck. Under date of March 24, 1952 the defendant submitted an offer of $30,000 which Levine rejected as unsatisfactory. In May 1953 Levine and the defendant arranged between themselves for the sale of the property for $29,000 and in July 1953 the property was conveyed by Levine to the defendant. Thereafter the plaintiff sued Levine for brokerage commission of $1,450 representing 5% of the purchase price of $29,000. After extensive litigation (*Breen v. Levine,* 32 *N. J. Super.* 525 (*App. Div.* 1954)) the plaintiff and Levine settled their controversy; Levine paid $900 to the plaintiff, who in March 1956 executed a general release under seal which discharged "Norman Levine, his heirs, executors, administrators and assigns" from all claims and particularly from any claim by the plaintiff growing out of the sale of the property at 1032 Eastlawn Drive or for any real estate commissions. The plaintiff seemingly acknowledges that the release was intended to free Levine from whatever claims the

plaintiff may have had against him, and in any event no further recovery of any kind is being sought by the plaintiff against Levine.

In 1957 the plaintiff filed his complaint in the Bergen County Court in which he sought compensatory and punitive damages from the defendant Peck. In his first count he alleged that the defendant had maliciously interfered with his right to earn a brokerage commission by representing to the plaintiff that he was no longer interested in the property, by dealing directly with Levine, by inducing Levine to drop the plaintiff as a broker, and by enticing Levine from the plaintiff as a client. The plaintiff also alleged in his first count that the defendant's wrongful acts were performed with the intent of defeating the plaintiff's right to his brokerage agreement with Levine and that, as the result of his wrongful acts, the defendant was enabled to purchase the property at a reduced price. In his second count the plaintiff alleged that the defendant had unlawfully conspired with Levine to secure title to the property by inducing Levine to drop the plaintiff as a broker and by representing to Levine that if the plaintiff was dropped as a broker and if the conveyance to the defendant was delayed for a period of more than one year, the plaintiff would lose his right to a brokerage commission. The adequacy of the complaint was not attacked by the defendant and it may be viewed as charging tortious interference with the plaintiff's contractual relations or with his prospective economic advantages, in the first count by the defendant individually and in the second count by the defendant and Levine jointly. See *Louis Schlesinger Co. v. Rice,* 4 *N. J.* 169 (1950); *Louis Kamm, Inc. v. Flink,* 113 *N. J. L.* 582 (*E. & A.* 1934); *Suslick v. Slatina,* 48 *N. J. Super.* 134 (*App. Div.* 1957); *Geo. H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc.,* 44 *N. J. Super.* 159 (*App. Div.* 1957); *McCue v. Deppert,* 21 *N. J. Super.* 591 (*App. Div.* 1952). *Cf. Goldman v. Feinberg,* 130 *Conn.* 671, 37 *A. 2d* 355 (*Sup. Ct. Err.* 1944); *Hornstein v. Podwitz,* 254 *N. Y* 443, 173 *N. E.* 674, 84 *A. L. R.* 1 (*Ct. App.* 1930); *Luke v. Du Pree,* 158 *Ga.*

590, 124 *S. E.* 13 (*Sup. Ct.* 1924); 1 *Harper & James, Torts,* §§ 6.5, 6.11 (1956); *Prosser, Torts,* §§ 106, 107 (*2d ed.* 1955).

 In support of his application for summary judgment the defendant submitted affidavits which were countered by an affidavit by the plaintiff. In examining these documents all doubts must be resolved against the moving party (see *Templeton v. Borough of Glen Rock,* 11 *N. J. Super.* 1, 4 (*App. Div.* 1950)) and summary judgment may be rested on the suggested total absence of tortious interference by the defendant, only if there was a clear and undisputed factual showing to that effect. See *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67 (1954); 25 *N. J.* 17 (1957). The Appellate Division found that there was no such showing (48 *N. J. Super.* at *page* 164) and our view is in accord. The Appellate Division also found that the plaintiff's release of his claim against Levine did not bar the plaintiff's claim grounded on the sole tort alleged in the first count, and that it likewise did not bar the plaintiff's claim grounded on the joint tort alleged in the second count unless the release was so intended or the plaintiff had received full compensation or compensation intended as such. See 48 *N. J. Super.* at *pages* 164–168. The Appellate Division pointed out that such questions of intent and full compensation present factual problems which could not fairly be disposed of on the affidavits supporting and countering the defendant's application for summary judgment; accordingly it reinstated the complaint in order that the matter may proceed to trial. See *Adolph Gottscho, Inc. v. American Marking Corp.,* 18 *N. J.* 467, 470 (1955), *certiorari* denied 350 *U. S.* 834, 76 *S. Ct.* 69, 100 *L. Ed.* 744 (1955); *Judson v. Peoples Bank & Trust Co. of Westfield, supra,* 17 *N. J.* at *page* 85. In support of his appeal from the Appellate Division's action, the defendant Peck has presented but one issue to which we will confine ourselves—he contends that under the common-law doctrine that the release of one joint tortfeasor automatically releases all, the plaintiff's claim against him was barred in its entirety and that consequently

the trial court's grant of summary judgment in his favor was proper and should not have been set aside.

In *Cocke v. Jennor, Hob.* 66, 80 *Eng. Rep.* 214 (*K. B.* 1614), the plaintiff had been assaulted by Jennor and Milborne. The plaintiff released Milborne and sued Jennor. The court held that the release of Milborne released Jennor; in its eyes the release was a "satisfaction in law" even though there may have been no satisfaction or compensation in fact and no intent whatever to absolve Jennor. In *Duck v. Mayeu,* [1892] 2 *Q. B.* 511 (*C. A.*), the plaintiff had a joint tort claim against Wills and Mayeu. He accepted a sum from Wills in full discharge of the liability of Wills but without prejudice to the plaintiff's claim against Mayeu. The court, citing *Cocke v. Jennor, supra,* stated that the English law was well-settled to the effect that the release of one joint tortfeasor releases the others, "the reason being that the cause of action, which is one and indivisible, having been released, all persons otherwise liable thereto are consequently released"; but ironically, the court then proceeded to construe the instrument as a covenant not to sue and to hold that, unlike a release, such a covenant does not discharge the other tortfeasors. In *Apley Estates Co. Ld. v. De Bernales,* [1947] *Ch.* 217, the court, following *Duck v. Mayeu, supra,* rejected a contention that a settlement with one joint tortfeasor which reserved the plaintiff's right to proceed against the others should have the legal effect of a release rather than a covenant not to sue; in the course of his opinion Lord Justice Morton pointed out that the release rule often operated to work hardship and that he, for one, was not prepared to extend it in any way. Professor Williams of the University of London has described the reasons given by the English courts as "technical, and even fictitious." See *Williams, Joint Torts and Contributory Negligence,* § 11 (1951). *Cf.* Note, 63 *L. Q. Rev.* 145–146 (1947). The rule was evolved when metaphysics rather than justice was the dominant factor and obviously tends to defeat the fair expectations and intentions of the parties to the release; it may be noted that all but one of the continental

legal systems have flatly rejected it. See 11 *Modern L. Rev.* 230, 232 (1948).

In the United States the English release rule has been under vigorous attack for many years. In 1923 Dean Wigmore referred to it as a surviving relic which was based on false logic and, although accepted by many courts, was fortunately being repudiated in some states by judicial decisions and in others by legislative action. See *Wigmore, "Release to One Joint-Tortfeasor,"* 17 *Ill. L. Rev.* 563 (1923). In his 1930 edition of *Cooley on Torts,* Professor Throckmorton referred to the growing tendency on the part of American courts to view with disfavor the English release rule and to replace it with the "sound and reasonable" rule that unless the parties so intended a release should not absolve strangers thereto. See *Throckmorton's Cooley on Torts* § 80 (1930). In 1941 Dean Prosser referred to the rule as "at best an antiquated survival of an arbitrary common law procedural concept" and suggested that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer "unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it." See *Prosser, Torts,* 1109, 1110 (1941); *Prosser, Torts,* 244–245 (2d ed. 1955). *Cf. Prosser, "Joint Torts and Several Liability,"* 25 *Calif. L. Rev.* 413, 424 (1937). In 1951 Professor Corbin's work on contracts included devastating comments on the English release rule in the field of torts as well as contracts (4 *Corbin, Contracts* §§ 931–935 (1951)), and in 1956 Professors Harper and James joined in advocating the modern view that the legal effect of a release on strangers thereto should justly be determined by the intent of the parties to the release and the extent of the compensation paid to the releasor rather than upon outmoded concepts of ancient times. See 1 *Harper & James, Torts,* 711–712 (1956). See also *Notes,* 22 *Minn. L. Rev.* 692 (1938); 18 *U. Cin. L. Rev.* 378 (1949); 33 *Notre Dame Law* 291 (1958).

When A has a tort claim against both B and C, there is nothing which forbids him from dealing individually with

B or C. If B or C pays A's claim in full then A clearly has no further recourse against B or C for he has received full satisfaction and may not justly claim any more. But if B or C wants to compromise with A by giving only partial compensation there is no reason why A should not be permitted to accept it and legally discharge his claim against the partial payor while proceeding with his claim for the balance against the other tortfeasor; indeed the law affirmatively favors such compromises. See *Judson v. Peoples Bank & Trust Co., supra,* 25 *N. J.* at *page* 35. And if A executes a release running in favor of the partial payor alone, there is no basis, in policy or justice, for giving the release the legal effect of discharging the other wrongdoer, who paid nothing and was a total stranger to the release, unless that was the intention of the parties to the release. Even in the states which still adhere to the English release rule, sweeping recognition is given to the force of the foregoing when their courts strain, as they consistently do, to construe releasing documents as covenants not to sue rather than formal releases. See Note, *"Release of (or covenant not to sue) one tort-feasor as affecting liability of others,"* 148 *A. L. R.* 1270, 1288 (1944); Note, *"Release of Joint Tort-Feasors in Texas,"* 36 *Texas L. Rev.* 55 (1957).

The distinction between releases and covenants not to sue has properly been described as an artificial one which looks to form rather than substance and which tends to trap the unwary. See *Gronquist v. Olson,* 242 *Minn.* 119, 64 *N. W. 2d* 159, 164 (*Sup. Ct.* 1954); *McKenna v. Austin,* 77 *U. S. App. D. C.* 228, 134 *F. 2d* 659, 148 *A. L. R.* 1253 (*D. C. Cir.* 1943). In *Gronquist* the plaintiff sued two joint tortfeasors and obtained a verdict of $8,000. Before the entry of judgment the plaintiff entered into a stipulation with one of the defendants in which he agreed that in consideration of the transfer to him of certain property (worth between $4,000 and $5,000) he would not enter judgment against that defendant or proceed against her in any other manner. The other defendant contended that the stipulation amounted to a release which also released

him; the court rejected this contention and held that it was a covenant not to sue which did not release the other defendant although the value of the property would be credited toward payment of the claim against him. In the course of his opinion Justice Nelson expressed the view that the distinction between releases and covenants not to sue was unwarranted; that the effect should be the same whether words of covenant or release are used; and that the "just and true rule" should be that, although a plaintiff who has received full satisfaction should be barred, a plaintiff who has received only part of his damages from one of the wrong-doers should not be barred from proceeding against the others.

*McKenna, supra,* was a case where the plaintiff had settled with one joint tortfeasor and had sued the other for the balance of her claimed damages; the plaintiff gave the paying tortfeasor a releasing instrument which could be construed as a covenant not to sue, although the court declined to rest its decision on that distinction which it described as entirely artificial. Instead it flatly rejected the English release rule in favor of the modern view that, unless so intended by the parties, a release of one joint tortfeasor who has made partial rather than full compensation does not release the other tortfeasors. In the course of his opinion for the court Justice Rutledge had this to say:

"The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability." (134 *F.* 2d at *page* 662)

See *Bolton v. Ziegler,* 111 *F. Supp.* 516 (*D. C. N. D. Iowa* 1953); *Rector v. Warner Bros. Pictures,* 102 *F. Supp.* 263

(*D. C. S. D. Cal.* 1952); *Black v. Martin,* 88 *Mont.* 256, 292 *P.* 577 (*Sup. Ct.* 1930).

In *Steenhuis v. Holland,* 217 *Ala.* 105, 115 *So.* 2 (*Sup. Ct.* 1927), the plaintiff's intestate was killed in a collision between the defendant's automobile in which he was riding and a street car of the Alabama Power Company. The plaintiff settled with the Power Company for $10,000 and executed a general release which set forth that, although the Power Company denied liability, the parties were desirous of compromising and releasing the Power Company from all claims of every kind which the plaintiff had against it. The court held that the release did not release the defendant Steenhuis, pointing out that "it is the right of an injured party to accept satisfaction in part from one tort-feasor, release him, and proceed against the others." In *Louisville Gas & Electric Co. v. Beaucond,* 188 *Ky.* 725, 224 *S. W.* 179, 186 (*Ct. App.* 1920), the court took the same approach, saying:

"A party who has suffered an injury by the joint or concurring acts of negligence of two or more persons may make a settlement with one and in consideration of a sum paid release that one, and such settlement will not have the effect of releasing the other from liability, unless the sum paid is received in satisfaction of his entire injury. If the sum received from one tort-feasor is in part satisfaction only, the recipient is not precluded from the right to recover the damages suffered by him from the other, although the other tort-feasor will be entitled to show the sum received by the complainant as a satisfaction, in *pro tanto,* of the damages to which he may be subjected. *Louisville & Evansville Mail Co. v. Barnes,* 117 *Ky.* 860, 79 *S. W.* 261, 25 *Ky. Law Rep.* 2036, 64 *L. R. A.* 574, 111 *Am. St. Rep.* 273."

In *Fitzgerald v. Union Stockyards Co.,* 89 *Neb.* 393, 131 *N. W.* 612, 33 *L. R. A., N. S.,* 983 (*Sup. Ct.* 1911), a general release of one joint tortfeasor who made partial payment in compromise of the plaintiff's claim did not stand in the way of proceedings against the other joint tortfeasor; the court held that, unless it was agreed between the parties to the settlement that the payment was in full of all damages suffered, the compromise was not a bar and

that oral evidence was admissible to establish the actual intention of the parties. *Cf. Weldon v. Lehmann,* 226 *Miss.* 600, 84 *So.* 2d 796 *(Sup. Ct.* 1956); *Alexander v. Hammarberg,* 103 *Cal. App.* 2d 872, 230 *P.* 2d 399 *(Dist. Ct. App.* 1951); *Eckel v. First Nat. Bank of Ft. Worth,* 165 *S. W.* 2d 776 *(Tex. Civ. App.* 1942); *Wallner v. Barry,* 207 *Cal.* 465, 279 *P.* 148, 151 *(Sup. Ct.* 1929). In *Safety Cab Co. v. Fair,* 181 *Okl.* 264, 74 *P.* 2d 607 *(Sup. Ct.* 1937), the court permitted parol evidence to establish whether a release from the plaintiff to one joint tortfeasor was intended by the parties to the release as full compensation or satisfaction discharging all tortfeasors. See *State Highway Commission v. Wilhite,* 218 *Ind.* 177, 31 *N. E.* 2d 281 *(Sup. Ct.* 1941). *Corbin, supra,* § 934 persuasively supports the position that the parol evidence rule does not preclude oral evidence that the parties to the release did not intend to discharge strangers thereto; he points out that the writing purports to be nothing but a release of the named releasee and does not purport to integrate matters affecting third parties; and he stresses that the oral understanding does not contradict or vary the written document but on the contrary is quite consistent with it. See *LaMonte v. Mott,* 93 *N. J. Eq.* 229, 250 *(E. & A.* 1921):

"By holding that he has not in fact released them no violence is done to the language of the release. It has full effect, as far as its language goes, for it does not, in terms, purport, to extend to, or to give immunity to, anyone but the releasee. If it extends to others, it is not because it so states but by legal construction."

*Cf. Atlantic Northern Airlines, Inc. v. Schwimmer,* 12 *N. J.* 293 (1953).

Early recognition is found in the reported New Jersey cases of the gross unfairness of a rule which automatically releases a joint debtor or tortfeasor upon the release of another joint debtor or tortfeasor who has made part payment in settlement of the claim against him. In *Shotwell v. Miller,* 1 *N. J. L.* 81 [Reprint 95] *(Sup. Ct.* 1791), Miller and Terril were obligated on a bond to Shotwell. Terril paid Shotwell half of the amount due and received

an indemnification bond from Shotwell. In Shotwell's action to recover the balance from Miller the contention was raised that since Terril had in effect been released and discharged, Miller was also released and discharged. In rejecting this contention the court remarked that the defense was a harsh one and "evidently contrary to justice"; that "constructive releases ought not be carried beyond the intent"; and that since "it was never the intention of the parties to discharge Miller" the defense should not prevail.

In *Administrator of Crane v. Alling,* 15 *N. J. L.* 423 (*Sup. Ct.* 1836), John Alling and Prudden Alling were jointly and severally obligated to pay Crane the sum of $2,150. Crane's executors sued John Alling but their action was discontinued upon John's payment of $400, and the executors agreed to prosecute no further action against him. Action was then instituted against Prudden Alling, who defended on the ground that John had been released and therefore he was released. The court expressed the legalistic and fictional view that since a sealed release of one joint obligor was "conclusive evidence of a payment *in full*" (*cf. N. J. S.* 2A:82–3) it released all joint obligors; but it then proceeded to hold that this applied only to "technical" releases under seal and not to covenants not to sue such as the instrument given to John Alling. In *Line & Nelson v. Nelson & Smalley,* 38 *N. J. L.* 358, 360 (*Sup. Ct.* 1876) Justice Van Syckel referred to the marked tendency of the courts to construe agreements as covenants not to sue rather than releases "so as not to frustrate the intention of the parties."

In *Spurr v. North Hudson County R. Co.,* 56 *N. J. L.* 346 (*Sup. Ct.* 1894), Chief Justice Beasley pointed out that although a plaintiff may proceed separately against joint tortfeasors, he can receive "but one satisfaction"; and in *Moss v. Cherdak,* 114 *N. J. L.* 332 (*E. & A.* 1934), Justice Perskie likewise pointed out that, because of the sound principle of justice that there can be but one satisfaction, a plaintiff who accepts satisfaction from one joint tortfeasor cannot sue the other. See *Aljian v. Ben Schlossberg,*

*Inc.,* 8 *N. J. Super.* 461 (*Law Div.* 1950). Assuming that satisfaction is used in its true sense, *i. e.,* full compensation (1 *Harper & James, supra,* at *p.* 711), the foregoing expressions are indisputable for duplicate compensation to the plaintiff would seem abhorrent to any current sense of justice. But if the plaintiff has relinquished his claim against one tortfeasor for only partial compensation and without any intent to release the other tortfeasor, it would seem equally abhorrent to any current sense of justice to absolve the wrongdoer who paid nothing whatever towards the plaintiff's damages and who merely stood by while his cotortfeasor fairly effected a compromise for himself. See *Judson v. Peoples Bank & Trust Co. of Westfield, supra,* 17 *N. J.* at *page* 85; *Adolph Gottscho, Inc. v. American Marking Corp., supra,* 18 *N. J.* at *page* 470.

In *Judson* the plaintiffs sued several joint tortfeasors. They settled with two of the defendants and dismissed their action against them without prejudice to the continuance of their action against the remaining defendants. The lower court held that the settlement constituted satisfaction discharging the plaintiffs' claim against all of the defendants but this was reversed on appeal. In the course of its opinion this court approvingly cited *McKenna v. Austin, supra,* for the principle that the crucial issue is whether the settlement was made and accepted as full satisfaction or merely as the best obtainable compromise and that ordinarily that is a question of fact. In *Gottscho* the plaintiff sued several joint tortfeasors and in the course of the proceeding entered into a stipulation with two of the defendants dismissing the action only as to them. The remaining defendants contended that they were consequently released but this contention was rejected in an opinion which, in the following language, voiced approbation of the eminently just view that a release of one joint tortfeasor does not release other joint tortfeasors unless it was so intended or the consideration constituted full compensation or was accepted as such:

"The history, purpose and limits of the doctrine that the release of one joint tort-feasor releases his co-tort-feasors have been exten-

sively dealt with elsewhere. See *McKenna v. Austin*, 77 *U. S. App. D. C.* 228, 134 *F. 2d* 659, 148 *A. L. R.* 1253 (*App. D. C.* 1943); *Prosser, Torts*, (1941), 1107; *Salmond, Torts (11th ed.* 1953), 90; *Winfield, Torts (6th ed.* 1954), 205; *Prosser, "Joint Torts and Several Liability,"* 25 *Cal. L. Rev.* 413, 422 (1937); 24 *So. Cal. L. Rev.* 466 (1951); 18 *U. of Cin. L. Rev.* 378 (1949); 11 *Modern L. Rev.* 230 (1948). *Salmond, supra*, expressed the common-law rule to be that the release applies to all even though this was not the intention of the parties 'the reason being that the cause of action which is one and indivisible, having been released, all persons otherwise liable thereto are consequently released.' This rather metaphysical approach finds little acceptance in modern times and it is not at all surprising that recent decisions have sought to rest the doctrine on the equitable basis that there may be but a single satisfaction for a wrong and to confine it accordingly. Thus in *Moss v. Cherdak*, 114 *N. J. L.* 332, 334 (*E. & A.* 1935), Justice Perskie stated that the doctrine was founded on a sound principle of justice, namely, that 'there can be but one satisfaction'; and in *Judson v. Peoples Bank & Trust Co. of Westfield, supra* Justice Brennan similarly noted that it was rooted 'in the sound and just principle that there may be but one satisfaction for a tortious wrong.' In the latter case this court indicated approval of the view, which is being received throughout the states with increasing favor, that the issue of whether a separate settlement with one joint tort-feasor is made in full satisfaction or is made as a lesser compromise with the purpose of pursuing the other tort-feasors is a factual one which will properly turn on the intention of the parties. See *McKenna v. Austin, supra; Bolton v. Ziegler*, 111 *F. Supp.* 516, 523 (*D. C. D. Iowa* 1953); *Gronquist v. Olson*, [242 *Minn.* 119] 64 *N. W. 2d* 159 (*Minn. Sup. Ct.* 1954). Dean Prosser, *supra*, at 1110, points out that in many jurisdictions there has been a definite retreat from the rule of the common law that a release of one joint tort-feasor necessarily releases the others and forcefully suggests the desirable rule to be 'that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it.' See *Seavey, Cogitations on Torts*, 53 (1954)." 18 *N. J.* at *pages* 470–471.

See 4 *Corbin, supra* § 931 (*Supp.* 1958) where Professor Corbin notes that in *Gottscho* "the modern view as to the effect of a settlement with one joint tortfeasor is stated and approved."

██ In light of all of the foregoing the Appellate Division fairly concluded that our State no longer recognizes the English common-law rule which, in absolute terms, released all joint tortfeasors upon the release of one. But *cf. Dura*

*Electric Lamp Co. v. Westinghouse Electric Corp.*, 249 *F.
2d* 5 (3 *Cir.* 1957). Our Legislature has never spoken on
the subject, and although the Uniform Contribution Among
Tortfeasors Act (9 *U. L. A.* 233 (1957) and 1958 *Supp.* 14)
contains provisions dealing with the effect of releases to
tortfeasors, the New Jersey statutes contain no such pro-
visions (*N. J. S.* 2A:53a–1 *et seq.*); indeed none of the bills
introduced on the subject of contribution among tortfeasors
made any mention of the subject of releases to tortfeasors and
no inferences may rationally be drawn from the ensuing
legislative silence. See 1952 *Senate No.* 145; 1952 *Assembly
No.* 212; 1952 *Assembly No.* 634; 1955 *Senate No.* 255.
*Cf. Oklahoma Tax Commission v. Texas Co.*, 336 *U. S.* 342,
367, 69 *S. Ct.* 561, 93 *L. Ed.* 721 (1948), where the court
refused to infer any approval of earlier judicial holdings
"from mere congressional silence." See *Collopy v. Newark
Eye and Ear Infirmary*, 27 *N. J.* 29, 41 (1958); *Hart &
Sacks, The Legal Process: Basic Problems in the Making
and Application of Law*, 1307 *et seq.* (*Cambridge Ten. Ed.*
1957).

There can hardly be any question as to the court's
power to remould the English common-law rule, or as to
the total absence of any reliance which might persuasively
call for the application of the rule of *stare decisis*. See
*Collopy v. Newark Eye and Ear Infirmary, supra; State
v. Culver*, 23 *N. J.* 495 (1957), *certiorari* denied 354 *U. S.*
925, 77 *S. Ct.* 1387, 1 *L. Ed. 2d* 1441 (1957). *Cf. Arrow
Builders Supply Corp. v. Hudson Terrace Apts., Inc.*, 15
*N. J.* 418 (1954), petition for rehearing denied 16 *N. J.*
47 (1954). A wrongdoer who never made any payment and
merely stood by while his co-wrongdoer made a partial pay-
ment in settlement and obtained a release would obviously
be in no just or equitable position to press the contention
that the common-law rule should not be altered because that
would deprive him of the windfall he seeks at the injured
party's expense. Indeed, he would in any event receive a
benefit from the partial payment of his co-wrongdoer for
it would ultimately be allowed as a credit on the claim against

him. See *Lombardo v. Creamer*, 113 *N. J. L.* 117 (*E. & A.*
1934); *Brandslein v. Ironbound Transportation Co.*, 112
*N. J. L.* 585 (*E. & A.* 1934); *Gelsmine v. Vignale*, 11 *N. J.
Super.* 481 (*App. Div.* 1951); *Husky Refining Co. v. Barnes*,
119 *F. 2d* 715, 134 *A. L. R.* 1221 (9 *Cir.* 1941). And
under the principles expressed in *Judson* (17 *N. J.* at *pages*
92–94; 25 *N. J.* at *pages* 34–39) the claim might be sub-
ject to additional reduction if necessary to protect the
releasee against demand for contribution by the co-tort-
feasor. See *McKenna v. Austin, supra*, 134 *F. 2d* at *page* 665.

When the reporters and advisers of the American Law
Institute drafted the *Restatement of the Law of Torts* they
were aware that the rule which automatically discharged a
joint tortfeasor upon the release of his co-tortfeasor worked
"to defeat the intention of the parties." See *Restatement,
Torts, Proposed Final Draft No. 9*, at *p.* 29 (1939). And
they were also aware that, although the execution of a sealed
release may import sufficient legal consideration and extin-
guish the releasor's claim against the releasee, it does not
indicate that the releasor has in fact received full compen-
sation or satisfaction. See *Id.*, at *pp.* 30–31. *Cf.* 6 *Williston,
Contracts* § 1820 (*rev. ed.* 1938). Nevertheless, they con-
cluded that a release of one tortfeasor should automatically
discharge all other tortfeasors unless on its face it expressly
provides otherwise. *Restatement, Torts*, § 885, *comment* b
(1939). This approach does not eliminate the injustices to
releasors who are not made aware of the need for expressly
reserving in the release instruments their rights against
strangers; it has in effect been rejected in the many legal
writings and decisions which have embraced the modern
rule approved by this court in *Gottscho*. *Cf. Restatement,
Contracts,* § 123 (1932).

■■ The first count of the plaintiff Breen's complaint
did not charge Levine with any tortious conduct but did
charge the defendant Peck with a sole tort; we agree with
the Appellate Division that as to that count the release
could not, in any event, be considered as a bar. *Cf. Husky
Refining Co. v. Barnes, supra;. Panichella v. Pennsylvania*

*Railroad Company,* 150 *F. Supp.* 79 (*D. C. W. D. Pa.* 1958) ; *Young v. Anderson,* 33 *Idaho* 522, 196 *P.* 193, 50 *A. L. R.* 1056 (1921). And we also agree with its view that the issue of whether the release barred the joint tort alleged in the second count rests on factual questions of intent and full compensation which must await determination at trial during which relevant oral as well as documentary evidence may be admitted. See 4 *Corbin, supra,* § 934; *Kahn, "Contracts,"* 13 *Rutgers L. Rev.* 200, 211–212 (1958).

In *McKenna v. Austin, supra,* 134 *F.* 2d at *page* 664, Justice Rutledge suggested that the person contending that the release discharged strangers should bear the burden of establishing that it was so intended or that the plaintiff had been fully compensated; on the other hand, Dean Prosser has suggested that the releasor should have the burden of establishing that he did not intend to release strangers and had not been fully compensated. See *Prosser, Torts,* 246 (2*d ed.* 1955). Since the matter has not been briefed or argued, we have not dealt with it although we agree with Judge Clapp's opinion that at least under the particular circumstances presented here the burden may fairly be placed on the defendant Peck. See 48 *N. J. Super.* at *page* 167. We recognize that there may be some difficulties of proof but they are not insurmountable nor even as troublesome as other difficulties of proof which, elsewhere in our law, have not been permitted to defeat justice. See, *e. g., Ciuba v. Irvington Varnish & Insulator Co.,* 27 *N. J.* 127, 139 (1958) ; *Jenkins v. Pennsylvania R. Co.,* 67 *N. J. L.* 331, 334 (*E. & A.* 1901). In most instances the evidential problems will not differ materially from those presented in cases involving instruments which courts construe as covenants not to sue. In any event, they present no justifiable basis for declining to discard an ancient rule based on metaphysical and fictive concepts and calculated to defeat the intention of the parties in favor of a modern rule based on reason and justice and calculated to carry out the intentions of the parties.

The judgment of the Appellate Division is in all respects: Affirmed.

HEHER, J. (concurring in affirmance). At common law a release of one or more tortfeasors discharges the cause of action as to all, whether or no the sum paid by the released tortfeasor was in fact full satisfaction for the damage done; this on the hypothesis of a cause of action that is one and indivisible and the release constituted a "satisfaction in law," while a covenant not to sue does not discharge the unreleased tortfeasors. And there is no contribution among tortfeasors *in pari delicto;* this on the principle that the wrongdoers have no just claim upon the judicial process for an equal or proportionate distribution of the common burden of their wrongdoing.

These principles still obtain in New Jersey save as modified by the Joint Tortfeasors Contribution Law, *L.* 1952, *c.* 335, *N. J. S.* 2A:53A–1 *et seq. Sattelberger v. Telep,* 14 *N. J.* 353 (1954). This is not the model Uniform Contribution among Tortfeasors Act recommended by the National Conference of Commissioners on Uniform State Laws in 1939, 9 *U. L. A.* 233 *et seq.* We have no occasion now to consider the essential differences in these drafts. It suffices to say that the New Jersey act does not embody section 2(3) of the model act providing that a joint tortfeasor who "enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement"; nor does it have section 3 of that draft providing that the "recovery of a judgment by the injured person against one joint tortfeasor does not discharge the other joint tortfeasors," nor section 4 providing that a "release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

The Legislature is the repository of the law-making power; and we are concerned here with principles of substantive law whose alteration is the exclusive province of that co-ordinate branch of the government. And it is a settled rule of exposition that statutes are to be construed in reference to the principles of the common law, "for it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required"; the law "infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced, for if the parliament had had that design, it is naturally said they would have expressed it." *State v. Norton,* 23 *N. J. L.* 33 (1850); *Carlo v. Okonite-Callender Cable Co.,* 3 *N. J.* 253 (1949); *Blackman v. Iles,* 4 *N. J.* 82 (1950); *State v. Western Union Telegraph Co.,* 12 *N. J.* 468, 486 (1953).

There was here a purposeful departure from the Uniform Act. Sections 3 and 4 constituted an integral part of the model act. The New Jersey act does not have their counterpart; and their excision plainly signifies a refusal, deliberate and affirmative in nature, to modify the common-law quality and legal consequence of a full release given to one of two or more joint tortfeasors and the common-law denial of contribution among tortfeasors, save as therein specifically provided. Otherwise, there is no rational explanation for their exclusion from our statute.

The New Jersey act, *N. J. S.* 2A:53A-3, provides for contribution where one of the joint tortfeasors pays the judgment in the action *ex delicto,* "in whole or in part"; recovery of contribution may be had "from the other joint tortfeasor or tortfeasors" for the "excess so paid over his *pro rata* share." There are no provisions otherwise for adjusting the rights of joint tortfeasors to the basic principle of contribution thus laid down, such as are contained in the Uniform Act; and the fulfillment of the statutory policy poses administrative problems. *Judson v. Peoples Bank and Trust Co.,* 25 *N. J.* 17, 38 (1957). See also

the Commissioners' Revised Draft of 1955, particularly sections 1, 2, 3 and 4.

But the full significance of the state statute need not have our attention now. It is enough to say that it does not evince a purpose to do more than modify the subsisting common-law principles to effectuate the legislative design of contribution under the given circumstances; and the judicial power cannot go beyond the consummation of the declared legislative will. *Judson v. Peoples Bank and Trust Co., 25 N. J.* 17, 36 (1957). It is not the judicial province to qualify the legislative expression of policy and purpose or to introduce new juristic concepts of substantive law not within the ambit of the statute.

The *Restatement of the Law of Torts* does not subscribe to the doctrine here approved. *Section* 885 declares the principle that a valid release of one tortfeasor, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document; and a covenant not to sue does not operate as a discharge of any other liable for the harm. The only qualification of the common-law rule is the effectuation of the intent of the parties, deemed immaterial at common law because of the indivisibility of the action.

And here, quite apart from the foregoing considerations, I would reiterate the views voiced in *Judson,* 17 *N. J.* 67, 94 (1954); same case, 25 *N. J.* 17, 39 (1957), that contribution has its roots in the equitable principle of equality among those *in aequali jure,* a sharing of the common responsibility and burden according to equity and natural justice—a rule of basic public policy that is not served by enforcing contribution among those who knowingly and willfully do grievous injury to person or property in the pursuit of a conspiratorial design, and a legislative intent to the contrary is not to be educed from vague and uncertain symbols of expression, but only from clear and

indubitable words to that effect; and the statute here cannot be so assessed. The Commissioners' Revised Act of 1955, section 1(c), provides that "[t]here is no right of contribution in favor of any tortfeasor who has intentionally [wilfully or wantonly] caused or contributed to the injury or wrongful death."

Tender solicitude for an equal division among willful and malicious wrongdoers and fraud-doers of the burden of the injurious consequences of these acts will not deter such evil endeavors. Can it be that the policy of "compromise and settlement" overshadows the ancient common-law principle founded in public morality that the judicial process cannot be thus invoked to achieve equality of burden between willful evildoers? Torts not so tainted are in a different category.

Here, there is at the very least a factual inquiry as to whether the release was intended to cover the claim for damages for malicious interference with the plaintiff's contractual interests. This concerns the true consideration for the instrument, a subject not within the parol evidence rule. *Atlantic Northern Airlines, Inc. v. Schwimmer*, 12 *N. J.* 293, 303 (1953). And there is an issue of fact as to the count charging a like tortious interference by the defendant alone and not in combination with another.

Subject to these considerations, I would affirm the judgment of the Appellate Division.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.