**SOLAR ELECTRIC CORPORATION,**
Plaintiff,

v.

**GENERAL ELECTRIC COMPANY** and
Sylvania Electric Products, Inc.,
Defendants.

**Civ. A. No. 14157.**

United States District Court
W. D. Pennsylvania.

Oct. 2, 1957.

**52**

Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

Kirkpatrick, Pomeroy, Lockhart & Johnson and Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., for defendants.

WILLSON, District Judge.

Plaintiff in its brief says the instant case is a treble damage action brought under Section 7 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C.A. § 15 and note, against General Electric and Sylvania to recover damages for injury to plaintiff's business, suffered by plaintiff as the result of certain judicially established violations of the antitrust laws by the defendants, General Electric and Sylvania, all as more fully specified in the Amended Complaint.

The Complaint was filed January 4, 1956. An Amended Complaint was filed July 10, 1956. Responsive answers have been filed by both defendants. The case is presently before the court on the defendants' motion for partial summary judgment, pursuant to the provisions of Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C. Defendants say they are not liable to plaintiff in any manner for any acts, conduct or activities of the defendants occurring prior to December 28, 1945, the date plaintiff executed a certain release in favor of Corning Glass Works.

Plaintiff Solar Electric Corporation is a Delaware corporation, with its principal manufacturing establishment at Warren, Pennsylvania, in this judicial district. Plaintiff's claim for relief is based on its allegation of damage to its business which resulted from a conspiracy among General Electric, Sylvania and others to restrain trade in, and to monopolize the manufacture, sale and distribution of incandescent lamps in this country and elsewhere. Solar has been engaged in the manufacture, sale and distribution of incandescent lamps for many years. General Electric, through its lamp division, has been and is one of the large manufacturers and distributors of incandescent lamps in this country. Sylvania is and for many years has been a large manufacturer and distributor of such lamps.

Defendant's motion for summary judgment is based upon the fact that on December 28, 1945, Solar gave to Corning Glass Works (Corning), a New York corporation, a general release, which, defendants contend, was intended to and did release Corning from any liability to Solar by reason of activities by Corning, alone, or in conjunction with General Electric and Sylvania, based upon claimed participation by these companies in a conspiracy to monopolize and restrain trade in the incandescent lamp business. Defendants contend that the conspiracy and the conduct alleged in the Complaint herein are the same as those for which Corning received a general release, and since Corning was regarded by Solar as jointly responsible for such conduct, the release constitutes a complete immunity to General Electric and Sylvania to the same degree as it does for Corning. This defense is separately set forth in the answers of defendants.

Since the Complaint contains allegations of wrongful conduct and damage to Solar, which occurred or which may be interpreted to have occurred after December 28, 1945, the date of the Corning

release, defendants' motion is only for judgment as to events occurring prior to that date and their consequences, recognizing that plaintiff may seek to assert claims for relief contained in the Complaint, based upon acts occurring after that date.

It is to be noticed that **Rule** 56(c) says, in part:

" * * * *The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."* (Emphasis supplied.)

The Court of Appeals of this Circuit has said:

" * * * The law is clear that one who moves for a summary judgment has the burden of demonstrating that there is no genuine issue of fact. * * *" Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 190 F.2d 817, 824.

See also Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167, 168, where the language of the court is:

" * * * 'summary judgment may not be given under Rule 56 * * * if there be an issue presented as to the existence of any material fact.' * * * 'Upon a motion for a summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. * * * All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. * * * '"

Thus, the problem before the court is to determine whether the pleadings, depositions, affidavits and admissions reveal the absence of any factual issue for determination. Plaintiff, in its brief, has referred to judicially established violations of the antitrust laws by the

two defendants, General Electric and Sylvania. The Amended Complaint cites Civil Action No. 1364, in the United States District Court for the District of New Jersey, commenced by the government on January 27, 1941, against some twelve defendants, among which were General Electric and Sylvania.

Plaintiff in its Amended Complaint says the complaint in that case charged violations by the defendants herein and others over a long period of time, of the various sections of the antitrust laws, *"in their incandescent lamp manufacturing and selling activities."* The Amended Complaint briefly refers to the findings of the court made in United States v. General Electric Co., D.C.1949, 82 F. Supp. 753, and in paragraph 12, refers generally to a finding by Judge Forman that General Electric was monopolizing and for a long period of time had monopolized the incandescent lamp industry of the United States, not only by itself but by separate combinations with one or more of the defendants in the New Jersey case. Plaintiff refers also to final judgment by Judge Forman on October 8, 1953, D.C., 115 F.Supp. 835, from which no appeal was taken.

Thus, it becomes apparent that plaintiff's present complaint alleges a broad general all-encompassing general conspiracy between the two defendants and others, covering every phase of the incandescent lamp industry which in turn has hampered and harassed plaintiff and other independent manufacturers at every turn. Plaintiff, also, it is apparent, relies upon the statute, Title 15 U.S. C.A. § 16, which permits a judgment in favor of the United States under the antitrust laws to be introduced as prima facie evidence against a defendant in a private antitrust suit such as is this case.

At this point in the discussion it is appropriate that the factual situation existing at the time the release was executed be examined. The facts are shown by the pleadings, the affidavits and depositions on file. There is no factual dispute of any consequence. There is, however, a difference of opin-

ion on the interpretation of the events which took place. The parties differ as to the construction of the correspondence which led up to the release. Especially do the parties differ as to the legal effect and scope of the release itself. Involved in the points mentioned, also, is the decision of Judge Forman in the New Jersey case and exactly what is there held.

At the oral argument, briefs were filed and since that time reply briefs have been filed on both sides. It is believed that plaintiff's position is summarized in its supplemental or reply brief. Plaintiff raises seven points. They are set forth in its reply brief and are set forth here verbatim.

"1. The release given to Corning on December 28, 1945, and upon which defendants rely, was procured by Corning under circumstances which require submission of all evidence of facts surrounding the negotiations for settlement between Corning and plaintiff to the jury whose province it is to determine to what extent the release is operative and the nature and validity of the claims against Corning from which Corning is to be deemed released. There is sufficient evidence here present from which a jury might reasonably and properly find that the release. is limited to (a) claims arising out of discriminatory pricing practices of Corning relating to sales of glass bulbs, tubing and cane, and (b) Corning's refusal to sell inside-frosted bulbs to plaintiff.

"2. Only claims within the actual contemplation of all parties to a release, whether the release be in general or specific form, are in fact released thereby. A jury might reasonably and properly find from the evidence here present that the claims released were limited to the two claims specified in the foregoing paragraph hereof.

"3. The consideration paid by Corning for the release was intended to reimburse plaintiff only for damages resulting from Corning's refus-al to sell plaintiff inside-frosted bulbs. As a matter of law, this Court should rule that the consideration thus paid was intended only as partial satisfaction of damages suffered by plaintiff, and that plaintiff may proceed for its further damages against any other persons, firms or corporations causing such further damages.

"4. The consideration paid for the release was plainly and expressly intended as reimbursement for damages caused by a single activity, separable both in time and effect from damages caused plaintiff by other wholly separate activities. As a matter of law this Court should rule that plaintiff may prosecute any of its claims for damages caused by such other activities against any other person, firm or corporation responsible therefor.

"5. As a matter of law and in accordance with established rules of construction, the scope of the Corning release must be limited to claims arising from discriminatory pricing of glass bulbs, tubing and cane and Corning's refusal to sell inside-frosted bulbs.

"6. There is insufficient evidence here present which would support a ruling by this Court that Corning and either or both of the defendants were co-conspirators in the activities claimed by plaintiff in the Amended Complaint to have caused it damage.

"7. Whether or not Corning did co-conspire with either or both defendants in such activities is a question of material fact to be submitted to the jury."

With the plaintiff's contention in mind, a brief summary of the facts appearing from the documents before me and concerning which there is no substantial dispute, shows:

In February, 1945, while the New Jersey case was pending, four private antitrust suits, all against Corning, were filed in the District Court for the South-

ern District of New York. A typical case is that of Jewel Incandescent Lamp Co. v. Corning Glass Works, Civil Action No. 26120. In the Jewel and in the other cases, plaintiffs charged Corning with the same overall conspiracies, restraint of trade and monopoly as the government had charged General Electric and others in the New Jersey action. The plaintiffs in the New York cases were independent incandescent lamp manufacturers. Late in 1945, Corning, being confronted with the four New York suits and, of course, the government suit, by telephone suggested a settlement with Solar. An official of Corning suggested to an official of Solar that a letter be written to Corning making a demand. Solar thereupon wrote Corning such a letter, Defendant's Exhibit C, Affidavit— Bickford, dated December 26, 1945.

The letter mentions plaintiff's understanding that Corning was about to settle actions brought against it by Jewel Incandescent Lamp Company and three independent manufacturers of incandescent lamps and that the amount to be paid in settlement of suits *"is based upon their claims for damages resulting from your refusal to sell inside-frosted bulbs to them in various quantities during certain periods prior to February 1943."* (Emphasis supplied.)

The next and last paragraph of the letter follows:

"You also refused to sell to us inside-frosted bulbs in substantial quantities prior to February 1943. We consider that we have claims against you similar to those of the plaintiffs in the pending actions but which we have not previously presented. Accordingly, we hereby demand payment of our claims upon terms satisfactory to us."

In its reply, Corning refers to the four pending suits. It says they were brought upon

" * * * substantially identical complaints, * * * to recover triple the damages claimed to have been suffered by them *by reason of*

*excessive or discriminatory charges in connection with purchases from us of bulbs, tubing and cane during the years 1935 to 1944, inclusive, and from our refusal to inside-frost incandescent bulbs for them during certain periods prior to February 1943."* (Emphasis supplied.)

In the third paragraph of the letter, Corning denied liability for the claims asserted in the pending actions and on and any and all similar claims which may be presented by anyone else.

In the fourth paragraph, Corning's letter continues with the recital that the " * * * plaintiffs in the four pending actions have agreed to relinquish and abandon all claims based upon alleged excessive and discriminatory charges *and all other grounds relied on in the complaints other than and excepting only the ground of our refusal to sell to them inside-frosted bulbs."*

Corning, in the fifth paragraph, conceded that during certain periods it refused to sell inside-frosted bulbs to plaintiff Solar and others. It set forth its reasons.

In the sixth paragraph, Corning stated that it will receive general releases from each of the New York plaintiffs, " * * * covering not only their inside-frosted claims but all other claims alleged in their complaints * * *."

The seventh paragraph recites Corning's denial of legal liability, but says that in keeping with its concept of business ethics it offers Solar the same treatment and continues to the effect that *upon receipt of a general release covering any and all claims of the types alleged in the complaints in the pending actions or otherwise,* " * * * (including any and all claims for damages resulting from alleged excessive or discriminatory charges in connection with purchases from us of bulbs, tubing and cane and any and all claims for damages resulting from our refusal to inside-frost incandescent bulbs) we will pay you in full settlement of all such claims the sum of $27,333.00."

The next to the last paragraph refers to information available to Corning relating to the quantity of bulbs which Solar was required to have "inside-frosted by yourself or others because of our refusal to sell them to you * * *" and stresses the fact that the contemplated payment for the release is to be accepted by Solar in full and final liquidation of all Solar's claims, regardless of the number of bulbs " * * * which, in fact, you or any of the plaintiffs were required to have inside-frosted by others because of our refusal to sell such inside-frosted bulbs to you * * *."

Thus, the Corning letter recites particular specified claims by Solar, but offers Solar $27,333 in full settlement and general release. Solar then gave Corning a general release and accepted the tendered offer. The release bears the same date as the letter, December 28, 1945. It is on a corporation general release form, partly printed and partly typed. In it plaintiff released

" * * * Corning Glass Works and all its subsidiary and affiliated companies, * * * licensees and sub-licensees, and each and every one of them, jointly and severally, * * *" etc.

" * * * from all causes of action * * * claims and demands whatsoever * * * including, *but without in any way limiting the generality of the foregoing,* all causes of action, claims and demands whatsoever which have arisen under or *by virtue of the anti-trust laws or other laws* of the United States or of any of the States, for damages from excessive or discriminatory charges for bulbs, tubing and cane sold by said Corning Glass Works to the undersigned and from the refusal of said Corning Glass Works to sell to the undersigned inside-frosted bulbs * * *."

With the foregoing background, all based on undisputed facts, the query remains, "Is there a genuine issue as to any material fact in the case?"

In the first of plaintiff's seven points mentioned, it says that the release was procured by Corning under circumstances which require submission of all facts surrounding negotiations for settlement between Corning and plaintiff to the jury to determine to what extent the release is operative and the nature and validity of the claims against Corning from which Corning is to be deemed released. Plaintiff contends that from the facts surrounding the execution of the release, a jury might reasonably and properly find that it is limited to claims arising out of discriminatory pricing practices of Corning relating to sales of glass bulbs, tubing and cane, and Corning's refusal to sell inside-frosted bulbs to plaintiff. Thus, the crux of the present issue in the case at bar is reached.

Plaintiff says that the release presents an issue for the jury and defendants say that if any issue is created, it is one of law. Plaintiff says that the release is limited to the two claims specified, and defendants say the release covers all claims for violation of any law of the United States without limitation. This is plaintiff's second point.

In plaintiff's third point, it suggests that the release shows on its face that it was intended to reimburse plaintiff only for damages resulting from Corning's refusal to sell plaintiff's inside-frosted bulbs. Plaintiff asserts that this court should rule that the consideration so paid was intended only as partial satisfaction of damages suffered by plaintiff and plaintiff may prosecute any of its claims for damages against any other person, firm or corporation causing such further damages.

In plaintiff's fourth point, it says that the release was plainly and expressly intended for reimbursement for damages caused by a single activity, separable both in time and effect from damages caused by plaintiff by other wholly separate activities.

Plaintiff's fifth point is that in accordance with established rules of construction, the scope of the Corning release must be limited to claims arising from

discriminatory pricing of glass bulbs, tubing and cane and Corning's refusal to sell inside-frosted bulbs.

In plaintiff's sixth point, it says that there is insufficient evidence before this court to support a ruling that Corning and either or both of the defendants were co-conspirators in the activities claimed by plaintiff in the amended complaint to have caused it damage.

And in the last point, No. 7, plaintiff raises an issue, saying that whether or not Corning did co-conspire with either or both defendants in such activities is a question of material fact to be submitted to a jury.

Thus, from plaintiff's position in this present matter, but the first and last of the points that it makes can possibly create a genuine issue as to any material fact. However, it is my view that none of the issues are factual. The query next is, Upon what facts do the defendants rely as the basis for their motion for summary judgment?

Defendants rely upon the general release from Solar to Corning of December 28, 1945, the exchange of letters between Solar and Corning, the amended complaint in the Jewel case and excerpts from the deposition and testimony of Mr. Stuart J. Myers, a principal stockholder and officer of Solar. In addition, defendants have presented some three affidavits. Defendants' main Exhibit is the Bickford affidavit, which contains the release and the two letters, the amended complaint in the Jewel case and Myers testimony.

In the Myers affidavit, submitted by plaintiff, it appears that he was Secretary, Treasurer and General Manager of plaintiff on and before December 28, 1945. He acknowledges the facts concerning the litigation commenced in New York state by the independent lamp manufacturers against Corning Glass works, but his knowledge was restricted to discriminatory practices of Corning in the sale and distribution to lamp manufacturers of lamp parts, namely, bulbs, tubing and cane necessary to the manufacture of incandescent lamps. His affi-

davit was executed August 10, 1957 and he attempts to explain the situation existing at the time the two letters were written and the release executed. But on another occasion, as appears from an excerpt of his testimony taken on deposition attached to the Bickford affidavit, his memory is hazy. He is testifying ten years after the event, although the exact date of his testimony does not appear. However, he admits the execution of the release, general in form. From the deposition and what counsel stated, at the time the release was given, Solar then apparently concluded that the issue was a finality. Solar officials were unable to locate the release or even to ascertain whether they had ever had a copy of it in their possession, or the correspondence or copies of the correspondence in Solar's files. Apparently, Mr. Myers at the time the release was given, was concerned only with the size of the check Corning offered, as he says at one point, when asked whether his recollection was refreshed: "I think Mr. Decker came down and I may have been blinded with the check that I remember I saw."

From the facts before me which show the background and circumstances existing at the time the release was executed, two conclusions are reached. The first is that Corning and Solar both had in contemplation that Solar had two claims against Corning, one arising from Corning's alleged discriminatory pricing practices on the sale of bulbs, tubing and cane, the other Corning's refusal to sell inside-frosted bulbs or to inside-frost bulbs, for Solar.

The second conclusion is that nevertheless Corning insisted upon and prepared a general release in which it was given immunity from all claims whatsoever which Solar might have under the antitrust laws of the United States against Corning and its subsidiary and affiliated companies, licensees and sublicensees.

Solar had two points to bargain on, but it was amenable to a general release. Corning prepared the release.

Solar was agreeable. It was more concerned with the size of the check tendered by Corning than with the exact terms and scope of the release. As the terms of the release are clear and precise, the release should be given effect according to its terms. See In re Brill's Estate, 337 Pa. 525, 12 A.2d 505, and Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 185 F.2d 196.

This court concludes that Solar settled and released all of its antitrust claims against Corning in the incandescent lamp field and Corning acquired full immunity under the release.

Two points remain for discussion and decision:

First: Does the settlement and release of claims of injury and damage under the antitrust laws as against one joint tort feasor operate to release others jointly and severally liable for such claims?

Second: Do the claims now asserted by the plaintiff Solar in the instant case against General Electric and Sylvania include the claims from which Corning and its licensees and sub-licensees received immunity in the release of December 28, 1945?

On the two points mentioned, this court believes that the contentions of the defendants are correct. It is well settled that injury and damage to a private party resulting from violations of the antitrust laws is a tortious act. The allegedly injured party may compromise a cause of action based on such a claim in the same manner as any other tortious act may be compromised and settled. Suckow Borax Mines Consol. v. Borax Consolidated, supra, 185 F.2d at page 208; and Radio Corporation of America v. Raytheon Mfg. Co., 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327.

The law is clear also that where one releases and discharges a claim or cause of action based upon injuries resulting from violations of antitrust laws, this act releases joint tort feasors or joint conspirators in the alleged violations. See Combined Bronx Amusements Inc. v. Warner Bros. Pictures, D.C., 132 F.Supp. 921, at page 922; where Judge Ryan says:

"The releases given to several of the alleged conspirators operated to discharge all of the defendants herein, inasmuch as their liability is joint." [Citing cases.]

Defendants cite other cases to the same effect, particularly Eagle Lion Classics, Inc. v. Loew's Inc., D.C., 121 F.Supp. 128, a decision by Circuit Judge Augustus N. Hand.

As to tort claims generally, it is well settled law that an unqualified release of one tort feasor releases all others who are liable for the wrong. Restatement, Torts, § 885.

The release in this case was executed at Warren. Pennsylvania law is in accord and is applicable here. Vines v. General Outdoor Advertising Co., 2 Cir., 171 F.2d 487; Suckow Borax Mines Consol. v. Borax Consolidated, supra; and Walder v. Paramount Publix Corporation, D.C., 132 F.Supp. 912.

The law of Pennsylvania has long applied the rule that settlement with and release of one joint tort feasor is a bar to subsequent recovery on the same claims against another. Williams v. LeBar, 141 Pa. 149, 21 A. 525; McLaughlin v. Monaghan, 290 Pa. 74, 138 A. 79; Thompson v. Fox, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550; and Union of Russian Societies, etc. v. Koss, 348 Pa. 574, 36 A.2d 433.

As to the last point for discussion on the present Solar complaint, while it makes no specific reference to Corning, it alleges the existence of a general conspiracy among General Electric, Sylvania and others to monopolize the incandescent lamp industry. It refers to a great many transactions and conduct deemed significant by Judge Forman in his decision. But Judge Forman said, 82 F.Supp. at page 904:

"The vertebrae forming the backbone, or prima facie proof of the conspiracy charged by the Govern-

ment consisted of the following documents:

"(1) the domestic license agreements between General Electric, Westinghouse and the 'B' Licensees;

"(2) the foreign license agreements between General Electric and International General Electric, General Electric and foreign manufacturers, International General Electric and Foreign Manufacturers and subsidiaries of General Electric and International General Electric;

"(3) the so-called glass agreements between General Electric, Corning, Philips, Westinghouse, American Blank, Empire, and the 'B' Licensees;

"(4) the documents upon which it is concluded that General Electric lacked a patent monopoly after 1933 permitting it to restrict manufacture of the completed incandescent lamp or limit the import or export of the same; and

"(5) the undisputed declarations of General Electric and International General Electric officials."

On page 901 of 82 F.Supp. 753, Judge Forman summarizes, under paragraph "(5) Conclusions," many of the individual restraints of trade and competition and the activities manifesting a monopoly, on the part of General Electric. Many of those are the same as the allegations in the original and amended complaint in the instant case. At this point, it should be mentioned that in Judge Forman's case, General Electric, Sylvania and Corning were three of the some 12 defendants. General Electric was the principal defendant. Judge Forman found that General Electric monopolized the incandescent lamp industry in violation of the Sherman Act. Many activities of General Electric and the other defendants were carefully scrutinized by Judge Forman in reaching his conclusion. Many of those same activities are the basis of plaintiff Solar's allegations in its present complaint; for instance, plaintiff claims that General Electric oc-

cupies the dominant position in the industry. It refers to the lack of valid patents to support its licensing agreements. Plaintiff says it was refused licenses; that General Electric controlled the lamp making machinery; that it filed application for patents for improvements on lamp making machinery; that its aggressive litigation practices intimidated and deterred independent lamp manufacturers from building machinery and competing with defendants. It refers to General Electric's Mazda trademark. It refers to common solicitation and elimination of agents and to General Electric's agreements and licenses with Westinghouse. It does not refer to General Electric's combination with Corning to monopolize the manufacture and distribution of bulbs, tubing and cane, but it does allege a General Electric monopoly over the manufacture and sale of electric lamp bases to enable it to maintain constant surveillance over the manufacture and sale of incandescent bulbs. It is significant, of course, that plaintiff in the instant case charged defendant General Electric with monopoly practices as to the base of the electric lamp, but, because of the release in question, does not refer to General Electric's and Corning's previous agreement with regard to the glass bulbs, tubing and cane which are, of course, part of an incandescent electric lamp described by plaintiff in its amended complaint.

Inspection of the allegations in the amended complaint as well as an examination of the allegations in the Jewel case brought in New York against Corning, and the findings and conclusions by Judge Forman leads this court to the conclusion that it must differ with plaintiff in its contention that it charges the instant defendants with separate and distinct conspiracies and monopolistic practices.

This court agrees with Judge Frank Kloeb in his unreported opinion cited by defendant. See Save Electric Corp. v. General Electric Co., D.C.N.D.Ohio W.D., Civil Action, 7146, March 28, 1956. Judge Kloeb had before him an exactly

similar release executed by the Save Electric Corp. in favor of Corning. He granted summary judgment in favor of General Electric. It is appropriate to quote portions of his opinion. He says, page 5:

"Referring to those four suits and it is agreed that the Jewel case is typical, we find that these are suits against Corning brought in the same capacity and for the same reason as the plaintiff in the instant case brings his suit; that is, they allege a monopoly and a restraint of trade, and they name specifically the General Electric Company, the defendant in the instant case as one of the co-conspirators and charge the entering into agreements between Corning and General Electric in restraint of trade and for the purpose of creating a monopoly. So that we find the instant suit based upon a monopoly claim and a restraint of trade claim, and we find the plaintiff basing his agreement with Corning back in 1945 on the four lawsuits that were brought in New York in which they bring cases for the same monopolistic reasons.

"The Court feels there can't be any division. You can't say, in considering an agreement and a release of this kind, that you are releasing a certain defendant only because of certain, specific acts of conspiracy that it engaged in with the defendant in this case. There was an overall general conspiracy, an overall general monopoly and restraint of trade that is charged in plaintiff's case here, and that was referred to in the agreement as being charged by the four New York plaintiffs against Corning. So that the Court believes that by incorporation of the New York suits the plaintiff placed himself in the same position that he is taking now; that is, he is putting himself in a position where he has associated himself there with the same charge he is making here, a monopoly and a restraint of trade.

"I don't know whether I make myself clear, but I am trying to reach this point. I am trying to go from the premise that there is a broad monopoly and a restraint of trade charged in the instant case in the same manner as there was in the four cases in New York which were incorporated in, relied upon, and referred to in the agreement that the plaintiff made with Corning in 1945."

Judge Kloeb discusses the release, which is the same in his case as it is in the instant case:

"* * * There is no doubt but that the drafter of that release used his form book, but the significant thing is that he took the broadest form he could have access to and that was the form that evidently satisfied the plaintiff in this case when he ascribed to it. He had in mind giving a general release of all claims or suits that he may now or hereafter have against the licensees and sub-licensees of Corning, and against every one, jointly and severally, and its officers, agents, stockholders and employees, and so forth, 'of all and from all, and all manner of action and actions,' etc. It was a broad general release. It indicates the state of mind of the plaintiff when he entered into it. He was getting a substantial sum of money, some $62,000.00, and in return he was releasing Corning and all things connected with it and the alleged conspiracy or monopoly and restraint of trade which is set out in the complaints of the four concerns in their suits in New York. I don't know what could be plainer.

"I think this is a broader matter than the cases that counsel have referred to wherein they take the position, and properly so, that the release of one co-conspirator releases all, or the release of one joint tort feasor releases all. We don't have a simple release here in which the plaintiff is releasing Corning, peri-

od. It goes further than that. It is not the simple release of a joint tort feasor, but it goes on and releases all else, everybody else connected with the general monopoly and restraint of trade upon which the agreement and release are based. The Court cannot see how he can avoid that. It is here. The plaintiff entered into it. He obtained a valuable consideration for it. Quite apparently, from a close reading of the documents, he had in his mind when he accepted the consideration the settling of all claims growing out of any monopoly, any conspiracy to monopolize, or any restraint of trade that Corning was or had been connected with General Electric and certain other named co-conspirators."

Further, it appears as an undisputed fact from the Hughes affidavit that General Electric was a licensee of Corning and also a sub-licensee of Corning. Sylvania is in the same class as General Electric because of its written agreement with Corning Glass Works in 1926, extended to 1940 and thereafter by mutual agreement and practice.

In its opposition to defendant's motion, plaintiff has submitted an affidavit of Clyde W. Armstrong, Esq., a member of the bar of this court and in whose judgment this court has great respect. This affidavit has not been overlooked. It is noticed that in his affidavit Mr. Armstrong said that when counsel obtained a copy of Solar's release to Corning, upon examination thereof, counsel advised plaintiff that the release might affect plaintiff's right to "glass product" damages, but that it did not affect plaintiff's claim for any damages suffered otherwise from defendant General Electric. His conclusion was that Corning was not found in the other cases mentioned to be a party to any of the illegal conduct with which Sylvania and General Electric are charged in plaintiff's amended complaint. In the Armstrong affidavit plaintiff's position is clearly stated. It is the crucial point in the case. My conclusion is, however, that Judge Kloeb correctly decided a similar issue. This court concurs in his decision.

The conclusion is that the Solar release embraces all claims up to December 28, 1945, which are asserted in the present action. There is no genuine issue as to any material fact to be tried, and defendants' motion for summary judgment in accordance with Rule 56 will be granted forthwith on submission of an order.