John **TAXIN** and Bernard Taxin, trading as John Taxin Co.

v.

**FOOD FAIR STORES, INC.**, et al.

Civ. A. No. 26967.

United States District Court
E. D. Pennsylvania.

Sept. 27, 1961.

828

Zink, Shinehouse & Holmes, Philadelphia, Pa., Lester J. Schaffer, Philadelphia, Pa., for plaintiffs.

Shapiro, Rosenfeld, Stalberg & Cook, by Hirsh W. Stalberg, Philadelphia, Pa., for moving defendants.

WOOD, District Judge.

This is a private antitrust suit brought by John and Bernard Taxin against numerous defendants. Answering the complaint, all of the defendants pleaded a general release wherein the Taxins, for a consideration of $18,000 paid in cash to their counsel, released the defendants from liability for all claims under the antitrust laws or otherwise which the Taxins might have had against them on or before March 28, 1958, the date of the release. Replying to this affirmative defense, the plaintiffs admitted the execution of the release, but pleaded that it had been obtained by a fraudulent promise made by Food Fair to the Taxins whereby Food Fair promised to purchase from the Taxins $500,000 worth of produce per year.

The promise was allegedly made at a meeting which occurred on February 5, 1958, at which only a few of the defendants were actually present. In fact, the plaintiffs did not allege that Samuel P. Mandell, or his two companies, Samuel P. Mandell Co., Inc., and Mandell Distributing Co., Inc., participated at all in the making of any fraudulent promises. The plaintiffs nevertheless sought to implicate the Mandell defendants in the alleged fraud. We rejected the plaintiffs' argument and held that the release, as to those three defendants, was valid and binding. We therefore granted their motion for summary judgment for all causes of action accruing prior to March 28, 1958, D.C., 131 F.Supp. 181. This decision was affirmed by the Circuit Court

of Appeals for the Third Circuit. See 3 Cir., 287 F.2d 448; certiorari denied 366 U.S. 930, 81 S.Ct. 1651, 6 L.Ed.2d 389. The defendants remaining in the case then filed their motions for summary judgment now before us. The reasons advanced in support of these motions may be summarized as follows:

1. The law of the case is that any defendant who did not participate in the making of the alleged promises is entitled to the protection of the release; if, of course, the release names such a defendant. Therefore, all defendants covered by the release who were not present, physically or by their agents, at the February 5th meeting are entitled to summary judgment.

2. As to the defendants who were present at the February 5th meeting, they too are entitled to summary judgment because the record as it stands establishes that there is no *genuine* issue of whether or not the plaintiffs *relied* on the alleged promises when they signed the release.

3. All of the defendants are entitled to summary judgment because the law of Pennsylvania clearly requires one who claims to have been defrauded to return the consideration he received in the allegedly fraudulent transaction, and failure to return the consideration (or tender its return) amounts to a ratification of the transaction. The plaintiffs in the case at bar have not tendered back the $18,000, or any part of it, they received at the signing of the release.

4. The statute of limitations bars recovery for all causes of action accruing prior to four years before September 11, 1959, the date of the filing of the complaint.

We shall take up the contentions of the defendants in the order stated above.

I. Defendants Who Were Not Present at the February 5th Meeting.

Certain defendants have established by affidavits, uncontradicted by plaintiffs, that they were not present physically or by their agents at the *one* meeting at which the alleged promises

were made. Some of these defendants are specifically named in the release. Therefore, there is no question of whether they are exonerated by the release. The other defendants are subsidiaries or affiliates of the Mandell companies. The release, after naming specific companies, continues in the following language:

> "their predecessors, successors and assigns, and all their present and former parent, affiliated and subsidiary companies and each of their successors and assigns * * *"

We are satisfied that the defendants which are not specifically named in the release are covered by the above-quoted language.

The plaintiffs have attempted to avoid the granting of these defendants' motions for summary judgment by filing an affidavit averring that Samuel P. Mandell "knew" of the fraudulent promises made by Food Fair and that "Samuel P. Mandell and his affiliated companies were aware of the promises made to plaintiffs and participated in the failure to carry out the said promises." (See second affidavit of John Taxin.) This knowledge on the part of Samuel P. Mandell, says plaintiffs, must be implied to his affiliated companies and thus somehow implicate these defendants in the alleged fraud. We reject this contention.

We think the second Taxin affidavit (quoted in part above) is too vague and lacking in *factual* assertions to raise any *genuine* issue of whether or not Mandell knew of the fraudulent promises supposedly made by Food Fair. But in addition, this affidavit does not aver that Mandell knew that the said promises were made with no intention of carrying them out, and for the purpose of fraudulently inducing plaintiffs to refrain from prosecuting their legal remedies. Therefore, there is no averment that Mandell knew that a *fraudulent* promise had been made.

Furthermore, it is difficult to understand the significance of the averment that Mandell "participated in" the failure of Food Fair to buy produce, a promise which *it* made and only *it* could carry out. We think the record is devoid of any factual assertions which would justify us now in concluding that there exists a question of fact, determinable by a jury, as to whether Samuel P. Mandell and his affiliated companies are legally responsible for the alleged fraud of Food Fair.

For the above-stated reasons, summary judgment shall be granted in favor of the following defendants:

Delaware Valley Fruit Distributing Co., Inc.;

Twin Packing Co., Inc.;

M.G.S. Marketing Co., Inc.;

M.G.S. Tomato Distributors, Inc.;

Israel Klein Co., Inc.;

Garden Fresh Vegetable Packing Co., Inc.;

J. & B. Produce Co., Inc.;

Klein Packing Co., Inc.;

Imperial Vegetable Co., Inc.;

World Wide Produce Co., Inc.[1]

George Friedland [2]
Samuel Friedland

II. Defendants Who Were Present at the Meeting of February 5th.

■ Defendants Louis Stein, Myer Marcus, and Arthur Rosenberg, all prin-

---

1. This company did not come into existence until October 17, 1958. It, therefore, could not be liable for participating in any conspiracy which may have existed prior to the date of the company's formation. It is therefore entitled to summary judgment for any acts occurring prior to October 17, 1958.

2. The complaint alleges that Samuel Friedland is chairman of the Board of Food Fair Stores, Inc., and that George Friedland was the chairman until August 21, 1959. Both defendants are included in the release by the following language:

> "[Plaintiffs hereby release Food Fair Stores, Inc. and] * * * their respective present and former directors, officers, employees, agents and shareholders * * *"

Both defendants filed affidavits in which they averred that they never took part in *any* of the negotiations leading up to the execution of the release, and never made any promises in connection therewith.

cipals of Food Fair Stores, Inc., were present at the meeting of February 5th at which the alleged promises were made. The affidavits of John Taxin and attorney William Gray support the allegations of fraud. Of course, these assertions are directly contradicted by the depositions of the defendants involved. This, of course, leaves us with a very genuine and very material issue of fact. However, the defendants contend that an essential element of the plaintiffs' position in this case is their alleged *reliance* upon the alleged promises of Food Fair in signing the release. Defendants argue that the record shows that the plaintiffs could not possibly prove that they relied upon any promises which might have been made on February 5, 1958, because subsequent to that date, attorney Shapiro wrote plaintiffs' counsel a letter stating that if plaintiffs were relying on any promises, they should not sign the release on that basis. Plaintiffs' counsel did not reply to this letter and it is admitted that the alleged promises were never again directly mentioned in the further negotiations which culminated in the signing of the release some seven weeks later. Defendants urge that the Shapiro letter, coupled with the silence of plaintiffs after receipt of the letter, followed by the signing of the release, conclusively establish that the release could not have been signed in reliance upon the alleged promises of February 5th.

The difficulty with this argument is that it completely ignores the affidavits of attorney William Gray. These affidavits offer an explanation of the Shapiro letter and of the plaintiffs' silence after receipt of that letter. The plaintiffs' explanation is that the Food Fair defendants refused to allow any writing to exist which would evidence the promises and that they insisted that the plaintiffs rely upon the good faith of the defendants. Attorney Gray had written a letter which the defendants apparently felt was written evidence of the promises, and the Shapiro letter was designed to "wipe out" the effect of the Gray letter. Of course, we express no opinion on the truth of this explanation. But the resulting disagreement between the parties as to what did happen during these negotiations certainly creates a genuine issue—a genuine dispute over a material fact. We think the Gray affidavits are sufficient to raise such an issue. For these reasons, we must reject this argument of the Food Fair defendants.

### III. Effect of Plaintiffs' Failure to Tender Back the Consideration.

■ The defendants contend that their motions for summary judgment should be granted for the independent reason that under the law of Pennsylvania, the consideration, given in a transaction later alleged to have been fraudulent, must be tendered back by the party claiming fraud or he will be deemed to have waived the fraud and affirmed the transaction. This rule is based on the idea that one cannot seek to avoid the effects of his prior agreement by claiming his consent thereto was obtained by fraud, while at the same time retaining the benefits he gained by such agreement, thus admitting its validity. There is no dispute here as to the fact of the plaintiffs' failure to tender back the $18,000 or any part thereof. However, as to the requirement that that tender be made before trial, or verdict, or judgment, we think that the law of Pennsylvania is not controlling.

In the case of Sola Electric Co. v. Jefferson Electric Co., 1942, 317 U.S. 173, at page 176, 63 S.Ct. 172, at page 173, 87 L.Ed. 165, the United States Supreme Court stated:

"It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules. In such a case our decision is not controlled by Erie Railroad [Co.] v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487]. There we followed state law because it was the law to be applied in the federal courts. But the doctrine of that case is inapplicable to those areas of ju-

dicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law. (Citing cases.)"

We think that this area of the law is dominated by the sweep of federal statutes and therefore this question is governed by federal law.

 Having determined that federal law would control the question of the necessity of tender in this case, we searched for federal law on the subject and were unable to find any cases directly in point.[3] Corpus Juris Secundum indicates that the cases from all jurisdictions, state and federal, are in hopeless disagreement. See 76 C.J.S. Release § 37. The rule as stated by the Restatement of the Law of Contracts, Section 480, is in part as follows:

"When Offer to Restore Performance Received Is a Condition of the Power to Avoid

"(1) The power of any party, other than the United States or one of them, to avoid a transaction for fraud or misrepresentation is conditional on an offer made promptly after acquiring knowledge of the fraud * * * to return the amount of any money * * * received as part of the transaction * * * except as stated in Subsection (2) * * *

"(2) A failure to return or offer to return performance received in accordance with the rule stated in Subsection (1) does not preclude avoidance if the performance

"* * * *

"(c) is merely money paid, the amount of which can be credited in partial cancellation of the injured party's claim * * * *"

We think the situation in the case at bar is covered by the exception to the general rule stated in Subsection 2 of Section 480. Should the plaintiffs ultimately obtain a judgment against the defendants, the latter could be protected by our crediting the amount they paid for the release against the amount of that judgment. For these reasons, we must reject the third argument of the defendants and hold that the plaintiffs are not barred from asserting fraud by their failure to tender back the consideration for the release.

IV. Applicability of the Statute of Limitations.

The defendants' final contention is that summary judgment should be entered in favor of *all* defendants on all causes of action accruing prior to four years before the filing of the complaint in this case. The complaint was filed on September 11, 1959, and the new statute of limitations contained in the antitrust statutes is four years (15 U.S.C.A. § 15b). Plaintiffs counter this argument by pointing out the general principle of law which states that where a suit seeks to obtain relief against a fraud, a statute of limitations does not begin to run until discovery of the fraud.

Neither plaintiffs nor defendants have cited any cases in support of their positions on this point, and it was mentioned only briefly in their oral arguments. We think the question of the applicability of the statute of limitations should not be decided at this time. In the first place, the question of whether or not any fraud was perpetrated upon the plaintiffs has not as yet been decided; and if that issue is decided adversely to the plaintiffs, we would not reach the question of the effect of the fraud on the running of the statute. In the second place, there is some division of authority on the question of whether actual fraud would prevent the running of the statute of limitations in this kind of case. See Austri-

---

3. However, it has been held that a plaintiff in an FELA case need not tender back the consideration received for a release before repudiating the release as having been obtained by fraud. Irish v. Central Vermont Ry., 2 Cir., 1947, 164 F.2d 837; Marshall v. New York Central R. R. Co., 7 Cir., 1955, 218 F.2d 900.

832

an v. Williams, D.C.S.D.N.Y.1948, 80 F. Supp. 437; Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C.S. D.N.Y.1951, 100 F.Supp. 15; Carr-Consolidated Biscuit Co. v. Moore, D.C.M.D. Pa.1954, 125 F.Supp. 423; Fravel v. Pennsylvania R. Co., D.C.D.Md.1952, 104 F.Supp. 84; and Larson v. Port of New York Authority, D.C.S.D.N.Y.1955, 17 F. R.D. 298. We think that if the case progresses to a point where this question must be decided, the issues presented deserve full briefs and arguments by counsel before we render a decision.

For these reasons, we must reject the fourth argument of the defendants, and consequently deny the motions for summary judgment of the defendants Food Fair Stores, Inc., Myer Marcus, Arthur Rosenberg, and Louis Stein.