WINCHESTER DRIVE–IN THEATRE, INC., et al., Plaintiffs,

v.

TWENTIETH CENTURY–FOX FILM COMPANY et al., Defendants.

No. 39632.

United States District Court
N. D. California, S. D.

July 1, 1964.

See, also, 35 F.R.D. 141.

Joseph L. Alioto, G. Joseph Bertain, Jr., San Francisco, Cal., for plaintiffs.

Pillsbury, Madison & Sutro, John A. Sutro, John B. Bates, Allan N. Littman, William I. Edlund, San Francisco, Cal., for defendant distributors Paramount Film Distributing Corp., Metro-Goldwyn-Mayer, Inc., Twentieth Century-Fox Film Corp., Warner Bros. Pictures Distributing Corp., Universal Film Exchanges, Inc., and Buena Vista Distribution Co., Inc.

Roy W. McDonald, New York, for defendant and third-party plaintiff Buena Vista Distribution Co., Inc.

Morrison, Foerster, Holloway, Clinton & Clark, Robert D. Raven, San Francisco, Cal., for Blumenfeld Enterprises, Inc.

ZIRPOLI, District Judge.

This is an antitrust action involving the distribution practices of several motion picture distributors in the northern California area. Plaintiffs are several corporations controlled by Raymond J. Syufy and Syufy Enterprises (hereinafter occasionally referred to as "Syufy"), which own and operate drive-in theatres in northern California. The defendants Paramount Film Distributing Corporation, Universal Film Exchanges, Inc., Twentieth Century-Fox Film Corporation, Metro-Goldwyn-Mayer, Inc. and Buena Vista Film Distribution Co., Inc. are distributors of motion pictures. Defendants Blumenfeld Enterprises, Inc. and Fox West Coast Theatres Corporation (not a party to this motion) are exhibitors that own and operate indoor theatres. Plaintiffs allege in their complaint that defendants conspired in violation of the antitrust laws to deprive plaintiffs of the opportunity to compete with indoor theatres for the exhibition of first run motion pictures.

Defendants moved pursuant to Rule 56 (b) of the Federal Rules of Civil Procedure for partial summary judgment on all claims for damages arising from conduct of the defendants prior to August 13, 1959. Defendants contend that because of the general rule that a release of one tortfeasor releases all joint tortfeasors, the "General Release" in favor of Fox released the moving defendants from all claims arising prior to August 13, 1959.

The history of this litigation is complicated and need not be set out in full here. The following factual background is sufficient for purposes of this motion: On November 8, 1958 some of the Syufy corporations filed an antitrust action in this district against Fox West Coast Theatres, Inc. and United Artists Theatre Circuit, Inc. (Civil Action No. 37792). This case will hereinafter be referred to as the "Rancho case", as distinguished from the present case, which will occasionally be referred to as the "Winchester case". On May 11, 1959 the plaintiffs in the Rancho case executed with Fox a document entitled "Agreement for Dismissal of Action and General Release", which provided in pertinent part as follows:

"WHEREAS, there is pending in the United States District Court for the Northern District of California that certain action filed by Rancho Drive In Theatre Corp., against Fox and others; and

"WHEREAS, various disputes have from time to time arisen between some or all of the Releasors and the Releasees described in Exhibit 'B' hereto annexed including Fox and Syufy; and

"WHEREAS, by agreement executed concurrently herewith Fox has entered into an agreement to sell to the nominee of Syufy certain assets of Fox; and

"WHEREAS, the parties hereto have agreed to compose, [sic] settle

and discharge all pending litigation and disputes among them or some of them; and

"WHEREAS, all of said Releasors are or have been controlled, directly or indirectly, by Raymond J. Syufy, and said Releasees are or have been directly or indirectly affiliated with Fox;

"NOW, THEREFORE, IT IS AGREED by and between the parties hereto as follows:

"1. Syufy agrees to procure and deliver to Fox forthwith the following documents:

"(a) Three copies of a stipulation in form as attached hereto as Exhibit 'A' executed by duly authorized counsel for Rancho Drive In Theatre Corp., a California corporation, plaintiff in that certain action pending in the United States District Court for the Northern District of California, Southern Division, entitled 'Rancho Drive In Theatre Corp., Plaintiff, v. Fox West Coast Theatres Corp. and United Artists Theatre Circuit, Inc., Defendants', being No. 37792 in the files of said court.

"(b) Three copies of a release in form as attached hereto as Exhibit 'B' duly executed by each and every Releasor named therein."

On June 8, 1959 Syufy executed the release referred to in the above quotation, and this release was limited by its terms to the Rancho case.[1] Thereafter, on August 13, 1959 Syufy executed another release in favor of Fox, which is the "General Release" claimed by defendants to discharge them from liability in the present motion. This latter release is very general and provides that:

"For and in consideration of the sum of $3,200.00 paid by Releasees to Raymond Syufy (who is hereby authorized by each Releasor to receive said sum on his, her, and its behalf) Releasors, and each of them release and discharge Releasees, and each of them, from any and all claims, demands or causes of action, known or unknown, against Releasees, or any of them, which Releasors, or any of them, now own or hold, have at any time heretofore owned or held, or may at any time hereafter own or hold, by reason of any matter, cause or thing whatsoever done, omitted or suffered to be done prior to the date of this instrument."

Over a year after this release was executed, Syufy filed on December 28, 1960 the present Winchester case.

On February 6, 1963 certain defendants in the Winchester case filed the first motion for partial summary judgment on the ground that the August release discharged them from liability as joint tortfeasors for damages resulting from their conduct prior to August 13, 1959. This Court in its order of March 6, 1963 denied this motion on the ground that it could not find as a matter of law that the August release discharged the defendants in the Winchester case. The Court ruled that there was a question of fact as to whether the May and June documents, which were limited by their terms to the Rancho case, should be read together with the August release as "one document".

[1]. This release provides in pertinent part as follows:

"Without in any way limiting the generality of the foregoing general release, it is understood that the same specifically includes any and all claims which have been asserted and which might be asserted in that certain action entitled 'Rancho Drive In Theatre Corp., Plaintiff, v. Fox West Coast Theatres Corp. and United Artists Theatre Circuit, Inc., Defendants', pending in the United States District Court for the Northern District of California, Southern Division, No. 37792 in the files of said court; provided, however, that this release shall not cover any claims of Releasors against United Artists Theatre Circuit, Inc., a defendant in said action."

Since the Court's prior ruling, the attorneys for plaintiffs and Fox filed a written stipulation executed by them on April 22, 1964 in the Winchester case as follows:

"IT IS HEREBY STIPULATED by and between all of the plaintiffs herein and defendant FOX WEST COAST THEATRES CORPORATION, by and through their respective counsel, that plaintiffs are seeking no damages from defendant FOX WEST COAST THEATRES CORPORATION for the period prior to August 13, 1959, said date being the date of a General Release executed by plaintiffs and on their behalf to said defendant, and attached as Exhibit B to the answer of said defendant on file herein."

Also on April 22, 1964 counsel for plaintiffs orally stipulated with counsel for defendants other than Fox that the August release released any and all claims against Fox for the period prior to August 13, 1959;[2] however, counsel also added the following qualification to the oral stipulation:

"MR. LITTMAN: As it pertains to all the corporations signatory to the release, is that the stipulation?

"MR. BERTAIN: Yes. Unless I am missing something, Your Honor, which I will have to check out, this is my understanding of the law and of the release.

"THE COURT: All right.

"MR. BERTAIN: But I would not want to be prejudiced in case I make a mistake on it.

"THE COURT: Well, that is your present stipulation, anyway.

"MR. BERTAIN: Right."

■ Counsel for Syufy has asked leave of court to correct the oral stipula-tion to provide that the August release be applied only to claims by the Rancho Drive-In Theatre (one of the plaintiff corporations). The Court cannot correct the stipulation because a stipulation requires assent of both parties, and counsel for defendants have not assented to the new terms; however, in light of the qualification to the stipulation, the Court must relieve counsel of the oral stipulation's binding effect. Of course, the Court's removal of the oral stipulation does not alter the binding effect of the written stipulation.

I. *The effect of the prior order of March 6, 1963 on the present motion for partial summary judgment.*

■ The prior order is not the "law of the case", insofar as the present motion is concerned, for two reasons: First, upon re-examination of the prior order in light of the record as of March 6, 1963, the Court finds that it was in error when it ruled that there was a question of fact as to whether the May and June documents should be read together with the August release as "one document", and therefore this ruling of its prior order is modified in the manner hereinafter stated. Second, the change in the record of March 6, 1963 by the written stipulation of April 22, 1964 removes any question of fact as to whether the August release was intended to apply solely to the Rancho case.

■ With respect to the first reason, the basis of the prior ruling, as noted above, was that the Court found a question of fact as to whether the August release could be read as "one instrument" with the earlier May and June documents. The August release does not refer to the May and June documents or the Rancho case; nor do the May and June documents refer to the August re-

2. "MR. LITTMAN: Is that so stipulated?
"MR. BERTAIN: That is so stipulated.
"MR. ALBALA: That is my understanding.
"THE COURT: All right, then it may be so stipulated. Stipulated, in other words, that this was intended as a complete release as far as Fox West Coast Theatres Corporation is concerned for the period prior to August 13, 1959.
"MR. BERTAIN: Right."

lease. Because the June release releases Fox from all liability in the Rancho case, the August release is meaningless unless it is construed to apply to claims other than the Rancho case. Therefore, the March 6, 1963 order is modified insofar as it holds that there is a factual issue as to whether the August release applies solely to the Rancho case.

With respect to the second and alternative reason, the written stipulation in the instant case of August 22, 1964 proves that the August release was not intended to apply solely to the Rancho case. Moreover, because the stipulation was made in the present case, the record is clear that the August release was intended to include at least claims arising from the alleged conspiracy in the Winchester case.[3] The present record is such that there is no factual issue as to whether the August release can be read as "one instrument" with the May and June documents. The Court finds that the August release was not intended to apply only to the Rancho case; and the Court further finds that the August release includes in its coverage the claims in the Winchester case.

## II. *State versus federal law.*

The reported cases do not agree on whether state or federal law governs the effect of a release in a federal antitrust case. In Dura Electric Lamp Co. v. Westinghouse Electric Corp., 249 F.2d 5 (3rd Cir. 1957), the Court stated that it was not sure whether state or federal law applied, and it held it was unnecessary to resolve the question because the state and federal law were identical. In Solar Electric Corp. v. General Electric Co., 156 F.Supp. 51 (D.C.W.D.Penn. 1957), the court held that state law applies. In Taxin v. Food Fairs Stores, Inc., 197 F.Supp. 827 (E.D.Pa.1960), and in Hilton, Inc., v. Triangle Publications, Inc., D.C., 198 F.Supp. 638, it was held without discussion that federal law applies. The Supreme Court has never

ruled on the question in an antitrust case; however, the court has held in the leading case of Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), that federal law governs the construction of a release in an FELA case because federal rights could be defeated if the states had the final say as to permissible defenses to the Federal Employers' Liability Act. See also Garrett v. Moore-McCormack, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

If the federal courts apply state law, there will be a lack of uniformity of result because state law varies considerably on the question of the effect of a general release of one joint tortfeasor on the remaining tortfeasors. The majority rule is that a general release of one joint tortfeasor releases the others. Prosser, Handbook on Torts, § 46, p. 243 (2d ed.); Annotation, 73 A.L.R.2d 390, 410, § 4. However, the majority rule is subject to many variations. Many courts hold that an express reservation of a claim against a nonsignatory tortfeasor is ineffective to prevent a discharge, even though the intent of the parties is clear. See for example, 73 A.L.R.2d 390, 413, § 5. However, some courts have attempted to mitigate the harshness of the common law rule by holding that where the general release contains an express reservation of claims against the remaining tortfeasors, they are not discharged. 73 A.L.R.2d 390, 414, § 5. This latter rule is adopted by the Restatement of Torts in § 885(1). A third approach expressed in Natrona Power Co. v. Clark, 31 Wyo. 284, 225 P. 586 (1924), is that a release containing an express reservation will be construed as a covenant not to sue. Some courts with a view to limiting the scope of the common law rule have held the majority rule inapplicable where the tortfeasors were regarded as independent, rather than joint or concurrent tortfeasors, Ash v. Mortenson, 24 Cal.2d 654, 150 P.2d 876 (1944); while other courts have held that the discharge cannot be

---

3. The language of the August release may be broad enough to apply to claims other than the Winchester case. But the Court does not now rule to that effect, since such a ruling would be unnecessary to its present decision.

avoided by making the distinction between independent and joint tortfeasors. Rushford v. United States, D.C., 92 F. Supp. 874 (applying New York law). The harshness of the majority rule is commonly avoided by using the artificial drafting device of a "covenant not to sue", which theoretically "preserves" the cause of action.

The growing minority rule is that the legal effect of a release on a stranger thereto should be determined by the intent of the parties to the release and the extent of compensation paid to the releasor, rather than upon outmoded concepts of ancient times. Breen v. Peck, 28 N.J. 351, 146 A.2d 665, 73 A.L.R.2d 390 (1958). See also 73 A.L.R.2d 390, 422, § 10; Friday v. United States, 239 F.2d 701, 705 (9 Cir. 1957).

In recent years some states have enacted statutes in this area of the law. Again there is a diversity in the statutory approach. One approach requires an express reservation of claims against non-signatory tortfeasors to prevent their discharge. Article 2203, Civil Code of Louisiana, LSA; Uniform Joint Obligations Act, § 4. On the other hand, other statutes provide that a release never discharges a non-signatory tortfeasor unless expressly so provided. Fla. Stat. § 54.28, F.S.A.; Michigan Compiled Laws, § 691.562; California Code of Civil Procedure, § 877; Uniform Contribution Among Joint Tortfeasors Act, § 4.

Where uniformity of result is essential to effectuate the purposes of a federal act, federal common law governs all matters which are ancillary to but not covered by the federal statute. Dice v. Akron, C. & Y. R. Co., supra; Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). In the antitrust field a great number of cases involve business enterprises located in more than one state. Most antitrust cases are settled before reaching trial. The application of state law could result in a variety of results, depending on the number of states involved and the uncertainty of modern choice of law rules.

The problem would be aggravated in nationwide antitrust litigation, such as the recent electrical equipment cases in which over 1800 lawsuits are pending in more than 30 districts. The Congressional policy of private antitrust enforcement cannot be subjected to the artificial distinction between whether a particular document is a covenant not to sue in one state and a general release in another. In light of the variety of state law on the subject and the uncertainty of modern conflict of laws rules, the federal courts would be laying a giant trap for the unwary if they were to apply state law in this field. Therefore, the Court concludes that federal rather than state law governs the effect of a general release on non-signatory joint tortfeasors in an action under the federal antitrust laws. Only thus can federal antitrust laws be given that uniform application throughout the country essential to effectuate their purpose.

### III. *The federal law.*

The Court agrees with the observation expressed in Taxin v. Food Fair Stores, Inc., 197 F.Supp. 827, at 831, that:

> "Having determined that federal law would control * * * we searched for federal law on the subject and were unable to find any cases directly in point."

The defendants contend that the federal law is that a general release of one tortfeasor without any contrary manifestation of intent in the instrument releases all other joint tortfeasors. For this proposition, defendants rely on Dura Electric Lamp Co. v. Westinghouse Electric Corp., (3rd Cir. 1957) 249 F.2d 5; Combined Bronx Amusements v. Warner Bros. Pictures, (S.D.N.Y.1955), 132 F.Supp. 921; Matland v. United States, (3rd Cir. 1961) 285 F.2d 752, 755; Solar Electric Corp. v. General Electric Co., (W.D.Pa.1957) 156 F.Supp. 51, 60; Duffy Theatres v. Griffith Consol. Theatres, (10 Cir. 1953) 208 F.2d 316, 323–324; Taxin v. Food Fair Stores, Inc., (E.D.Pa. 1960) 197 F.Supp. 827; and Restatement, Torts, § 885(1). A reading of

these cases shows that they simply adopt without discussion the general state common law or the Restatement. None of them attempt to state or develop a separate federal rule or consider the special problems created by the multistate character of antitrust litigation. Perhaps the only case which for strictly federal purposes has actually developed a rule governing the effect of general releases is McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, at page 664, 148 A.L.R. 1253, wherein the rule as applied for the District of Columbia appears as follows:

> "In summary, there is no support for the rule of unitary discharge in the notion of entirety of obligation among joint tortfeasors. There is foundation in singleness of the injury, when complete indemnity has been made. We adhere to the rule in that circumstance. We repudiate it in others. Whether or not the settlement amounts to full reparation is to be determined, not merely from the fact of settlement, but as the facts of the particular situation dictate. Partial satisfaction taken in compromise and release of liability of one or some of the wrongdoers does not discharge the others. In the present case, the agreement with Independent expressly reserved the plaintiff's rights against the defendant. He therefore was not discharged. *It is not material whether the instrument be considered a release or a covenant not to sue.*" (Emphasis added.)

Stella v. Kaiser, (2d Cir. 1955) 221 F.2d 115, held that the doctrine of McKenna v. Austin is the federal rule, but Stella v. Kaiser is not helpful here because the language of the release in that case included an express reference to the nonsignatory tortfeasor and the release in question here contains no such reference.

The general state rule that a release discharges the remaining tortfeasors irrespective of the intent of the parties and the Restatement rule that only a clear expression of intent in the instrument will prevent a discharge are inadequate rules for federal antitrust cases. Both rules ignore the fact that the plaintiff usually intends to release only the signatory tortfeasor. Although the Restatement rule is an improvement on the harsher general rule, it is still a trap for the unwary and today appears to be based solely on a metaphysical notion of the early common law and without consideration of the modern realities of business litigation, particularly in the antitrust field.

In light of the lack of a well-developed federal rule in the antitrust field and in light of the inadequacy of the general common law, this Court has a duty to fashion a rule which will further the federal policy of relying heavily on private, rather than public, enforcement of the antitrust laws. The creative responsibility of this Court is similar to the responsibility imposed by the Supreme Court in Textile Workers Union, etc. v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1956), on the lower federal courts to fashion a federal common law of arbitration within the policy of our national labor laws. In fashioning a federal rule on releases in the antitrust field, the federal courts must keep in mind the realities of the multistate character of much of the present private antitrust litigation. This Court would be remiss in its duty if it simply perpetuated an artificial common law trap for the unwary, which remains in our law only because of the force of history.

The better rule for the antitrust field is embodied in Section 4 of the Uniform Contribution Among Joint Tortfeasors Act as follows:

> "A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the

total claim shall be reduced, if greater than the consideration paid."

This rule has the following advantages: it is more in line with the normal intention of the parties to a release; it does not create a trap for the unwary, particularly those who practice in states which have adopted the statutory or minority rules; and it prevents double recovery without resorting to artificial concepts because the amount received in settlement is deducted from the total liability. The problem of determining the value of non-monetary consideration paid for the release is no more difficult than the commonplace difficulties encountered in determining damages in any antitrust case. The problem can be handled by a special interrogatory to the jury, as was done in this district in Bal Theatre Corp. v. Paramount Film Distributing Corp., D.C., 206 F.Supp. 708 (1962).

Applying the federal rule as developed by this Court to the facts of the present case, the motion for partial summary judgment must be denied. The terms of the August release are quite general, but they do not include a provision showing an intent to discharge any other possible tortfeasors. Therefore, the "General Release" of August 13, 1959 can apply only to Fox West Coast Theatres Corporation.

It is therefore ordered that defendants' motion for partial summary judgment is denied.

## CERTIFICATE OF PROBABLE CAUSE

The question of what rule the federal courts should apply to govern the effect of a general release in a federal antitrust case presents a question to which there is no clear answer in the authorities. In the opinion of this Court, this order involves controlling questions of law for which there is substantial ground for difference of opinion, as noted in the Court's discussion of the authorities cited in this opinion. In that connection see also Suckow Borax Mines Consol. v.

Borax Consolidated, 9 Cir., 185 F.2d 196, at 207. Therefore, pursuant to the provisions of 28 U.S.C. § 1292(b), an immediate appeal from the order will materially advance the ultimate termination of the litigation in this and other cases pending in this court.